ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

AVNER MALOUL and ALLEN LOWY,

Plaintiff,

-against-

IVAN BERKOWITZ, GREAT COURT CAPITAL, LLC, SD PARTNERS, LLC, UTIX GROUP, INC., VSUS TECHNOLOGIES, INC., and SUNSET BRANDS, INC.,

Defendants.

---------------------------------------------------------------X

07 Civ. 8525 (LBS)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

GERSTEN SAVAGE, LLP
600 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022-6018
(212) 752-9700

# Table of Contents

Page

**Preliminary Statement** ... 1

**Statement of Facts** ... 2

Fraudulent Inducement ... 2

The First Investment (VSUS) ... 3

The Second Investment (Utix) ... 4

The Third Investment (Sunset) ... 6

Subsequent Investments ... 7

Non-Registration ... 8

**Argument** ... 8

**I. The Fraud Allegations in the Complaint Are Not Actionable as a Matter of Law** ... 8

**II. The Fraud Allegations Do Not Satisfy Rule 9(b) in Any Event** ... 12

**III. Rescission Is Unavailable Against These Defendants in the Absence of Actionable Fraud** ... 13

**Conclusion** ... 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AVNER MALOUL and ALLEN LOWY,

Plaintiff,

07 Civ. 8525 (LBS)

-against-

IVAN BERKOWITZ, GREAT COURT CAPITAL, LLC, SD PARTNERS, LLC, UTIX GROUP, INC., VSUS TECHNOLOGIES, INC., and SUNSET BRANDS, INC.,

Defendants.
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendants Ivan Berkowitz, Great Court Capital, LLC, and SD Partners, LLC, by their undersigned counsel, respectfully submit this memorandum of law, together with the transmittal affidavit of Steven Popofsky (which annexes the complaint as Exhibit A), in support of their motion to dismiss the complaint as against them for failure to state a claim upon which relief can be granted.

**Preliminary Statement**

The complaint states that at least one of the plaintiffs had known the individual defendant, Ivan Berkowitz, for over twenty years, and previously had made several successful investments through Berkowitz. As a result, plaintiffs claim – they admit! – that they made the investments at issue here based solely on Berkowitz "tout[ing]" the investments with representations such as "bonanza," "low-risk opportunity," and "fail safe."

Plaintiffs also admit that they sent their money on several different occasions, over many months, without ever seeing – or asking for – "any written information about the[ir] investments"

(and therefore that they did not seek to verify alleged misrepresentations such as that their promissory notes were "subject to personal guaranties by the officers" of the issuing companies).

In addition, in blatant violation of Rule 9(b), they not only fail to provide specifics as to the misrepresentations upon which they purportedly relied (when, where, and how the representations were made and to whom they were made), but they implausibly contend that the exact same (multiple) representations were made, verbatim, as to each separate infusion of funds over many months.

This scattershot pleading does not make actionable claims – including with regard to plaintiffs' rescission claim, which cannot be maintained against non-contracting parties in the absence of fraud – for the reasons set forth in detail below, and accordingly should be dismissed at this stage as a matter of law.

**Statement of Facts**

The facts alleged in the complaint, which is annexed to the accompanying transmittal affidavit of Steven Popofsky, are taken as true for purposes of this motion.[1] Plaintiffs Lowy and Maloul are suing individual defendant Ivan Berkowitz and two entities (Great Court Capital and SD Partners) of which he is a principal. (Complt. paras. 5-10) Berkowitz, Great Court, and SD are the moving defendants on this motion.

Fraudulent Inducement

Plaintiffs allege that the moving defendants fraudulently induced them, during the 18-

---

[1]If the case is not dismissed at this stage, defendants will show that plaintiffs' account is largely false, that the notion that plaintiffs were duped into anything here is fanciful, and that they were not only experienced and sophisticated investors but knew exactly what was going on every step of the way.

month period between November 2003 and April 2005, to invest a total of $725,000 in three companies known as Utix, VSUS, and Sunset Brands. (Complt. paras. 11-14, 18-19) Those three companies are also named as defendants but are not movants on this motion.

Plaintiff Lowy admits having known Berkowitz for over twenty years and having previously made "several successful investments in early stage companies" through him. (Complt. para. 16) The three investments at issue in this suit are now alleged to be "essentially worthless" (Complt. para. 47); and not surprisingly, Lowy is not complaining here about those prior successful investments.

<u>The First Investment (VSUS)</u>

In November of 2003, plaintiffs each invested $85,000 in VSUS, in exchange for promissory notes and warrants to purchase shares. (Complt. para. 18(a)) According to the complaint (para. 15), that investment was made "exclusively in reliance" upon the following alleged misrepresentations by Berkowitz:

- "Shortly in advance of [the] investment commitment," Berkowitz "tout[ed] the investment, emphasizing that it was a low-risk opportunity." (Complt. para. 21)

- Berkowitz "touted" the investment as "fail safe" and a 'bonanza.'" (Complt. paras. 65, 31-32)

- Berkowitz was "only making [the investment] available to Plaintiffs because they were 'friends.'" He also told them that he was "co-investing" on the same terms and conditions and was "reducing" his own investment in order to "'make room'" for plaintiffs. (Complt. paras. 29, 32, 50)

- Berkowitz told plaintiffs that the principal amount of their investment was "secure" (Complt. paras. 22, 23, 31); that the interest payments under the notes were also "secure" (Complt. para. 22); that the principal amounts "would be promptly returned to them" upon "maturation" of the investment (Complt. para. 23); and that both principal and interest were "subject to personal guaranties by the officers of [VSUS]" (Complt. para. 22)

- Berkowitz also failed to disclose the "risks" of the investment and never inquired into whether it was "suitable" for plaintiffs. (Complt. paras. 1, 41, 61, 65)

Plaintiffs made their November 2003 investment in VSUS "solely based on" the above representations by Berkowitz (Complt. para. 20). Plaintiffs do not identify precisely when all (or any) of those alleged representations were made (on what date? all at the same time?), nor where they were made, nor the manner in which they were made (in person? over the telephone? in writing?), nor to whom they were made (to one plaintiff? to both plaintiffs? together or separately?).

Moreover, "in advance of committing funds," plaintiffs "were not provided with" (and presumably did not ask for) "any written information" about the investment – not a prospectus, not a brochure, not a contract, not a single piece of paper. (Complt. para. 20)

They made their investment simply by transferring their funds in trust to the law firm of Bondy & Schloss, at the request of Berkowitz, and the law firm was then to pay the money to VSUS in exchange for plaintiffs' securities. (Complt. paras. 35-37) Plaintiffs claim that "at the time of" this investment, "it was not clear" to them "what persons or entities were clients of the Law Firm." They allege that they "were led to believe" that Bondy & Schloss was "representing their interests at the request of Berkowitz," but that "[u]pon information and belief, however, the Law Firm was also representing [VSUS] in the transaction." (Complt. para. 38)

<u>The Second Investment (Utix)</u>

Six months later, in May of 2004, plaintiffs invested a total of $200,000 in Utix, also in exchange for promissory notes and warrants to purchase shares. (Complt. para. 18(b)) Curiously, everything is said to have happened <u>exactly</u> the same way; and the Utix investment

too was made "exclusively in reliance" upon the same alleged misrepresentations by Berkowitz:

- "Shortly in advance of [the] investment commitment," Berkowitz "tout[ed] the investment, emphasizing that it was a low-risk opportunity." (Complt. para. 21)

- Berkowitz "touted" the investment as "fail safe" and a 'bonanza.'" (Complt. paras. 65, 31-32)

- Berkowitz was "only making [the investment] available to Plaintiffs because they were 'friends.'" He also told them that he was "co-investing" on the same terms and conditions and was "reducing" his own investment in order to "'make room'" for plaintiffs. (Complt. paras. 29, 32, 50)

- Berkowitz told plaintiffs that the principal amount of their investment was "secure" (Complt. paras. 22, 23, 31); that the interest payments under the notes were also "secure" (Complt. para. 22); that the principal amounts "would be promptly returned to them" upon "maturation" of the investment (Complt. para. 23); and that both principal and interest were "subject to personal guaranties by the officers of [Utix]" (Complt. para. 22)

- Berkowitz also failed to disclose the "risks" of the investment and never inquired into whether it was "suitable" for plaintiffs. (Complt. paras. 1, 41, 61, 65)

Plaintiffs made their investments in Utix in May of 2004 again "solely based on" the above representations by Berkowitz (Complt. para. 20). Again plaintiffs do not identify precisely when all (or any) of those alleged representations were made, nor where they were made, nor the manner in which they were made, nor to whom they were made.

And again, "in advance of committing funds," plaintiffs "were not provided with any written information" about the investment. (Complt. para. 20) They do not state whether, during the six months between their VSUS investment and their Utix investment, they had ever received anything in writing about VSUS, but in any event they presumably did not ask for anything in writing about Utix either.

And again plaintiffs simply transferred their funds to the law firm of Bondy & Schloss

(Complt. paras. 35-37), and again "it was not clear" to them – six months after their first investment – whether or not they "were clients of the Law Firm" (Complt. para. 38).

The Third Investment (Sunset)

Five months after the Utix investment, eleven months after the VSUS investment, in October of 2004 plaintiff Maloul invested $120,000 in Sunset Brands, in exchange for convertible stock and warrants. (Complt. para. 18(c)) Amazingly, everything once again is said to have happened exactly the same way; and the Sunset investment too was made "exclusively in reliance" upon the same alleged misrepresentations by Berkowitz:

- "Shortly in advance of [the] investment commitment," Berkowitz "tout[ed] the investment, emphasizing that it was a low-risk opportunity." (Complt. para. 21)

- Berkowitz "touted" the investment as "fail safe" and a 'bonanza.'" (Complt. paras. 65, 31-32)

- Berkowitz was "only making [the investment] available to Plaintiff[] because they were 'friends.'" He also said he was "co-investing" on the same terms and conditions and was "reducing" his own investment in order to "'make room'" for Maloul. (Complt. paras. 29, 32, 50)

- Berkowitz told plaintiff that the principal amount of his investment was "secure" (Complt. paras. 22, 23, 31); that the interest payments under the notes were also "secure" (Complt. para. 22); that the principal amounts "would be promptly returned" upon "maturation" of the investment (Complt. para. 23); and that both principal and interest were "subject to personal guaranties by the officers of [Sunset]" (Complt. para. 22)

- Berkowitz also failed to disclose the "risks" of the investment and never inquired into whether it was "suitable" for plaintiff. (Complt. paras. 1, 41, 61, 65)

Plaintiff made this investment again "solely based on" the above representations by Berkowitz (Complt. para. 20). Again plaintiff does not identify precisely when all (or any) of those alleged representations were made, nor where they were made, nor the manner in which

they were made, nor to whom they were made.

And again, "in advance of committing funds," plaintiff was "not provided with any written information" about the investment. (Complt. para. 20) The complaint does not state whether, during the eleven months between the VSUS investment and the Sunset investment, or during the five months between the Utix investment and the Sunset investment, plaintiffs had ever received anything in writing about either VSUS or Utix, but in any event Maloul presumably did not ask for anything in writing about Sunset either before making his investment in October of 2004.

And again plaintiff simply transferred funds to the law firm of Bondy & Schloss (Complt. paras. 35-37), and again "it was not clear" – well more than a year after the first such transaction – whether or not he was a client of the law firm (Complt. para. 38).

Subsequent Investments

Plaintiffs allege generally that "Shortly before payments were due to Plaintiffs pursuant to the purported terms of the Investments, Plaintiffs would receive word from the Issuer Defendants that the payments could not be made on time, and offering the Plaintiffs a higher rate of interest and the opportunity to purchase more stock from the Issuer Defendants. . . . Plaintiffs had no alternative but to accept these terms that were unilaterally imposed upon them in the hope of recouping their investment." (Complt. paras. 39-40) However, the specific allegations show only subsequent investments in VSUS – not in all three companies, as implied by the foregoing language – in October 2004 (at the same time as the Sunset investment) and then again in April 2005. (Complt. paras. 18(c), 18(d))

No misrepresentations are alleged with respect to those two subsequent investments in

VSUS. Nor do plaintiffs state whether, during the six months between the third investment (Sunset) and the final infusion into VSUS, they ever asked for or received anything at all concerning the nature or terms of their investments.

Non-Registration

Plaintiffs allege that Berkowitz did not disclose that he and his firms were being paid fees by the issuer defendants (Complt. paras. 24, 30, 41); that they were required to register as broker-dealers but were not so registered (Complt. paras. 49, 53, 25-26); and that plaintiffs were unaware of all of that until the spring of 2007. Plaintiffs accordingly seek to rescind their investments and to hold Berkowitz and his firms jointly and severally liable with the issuers for such rescission. (Complt. paras. 56-58)

As noted above, defendants will establish at trial, if necessary, that they were not in violation of any registration requirements and that plaintiffs were fully aware of their roles and fees in connection with the subject issuers. For purposes of this motion, however, as discussed in the Argument section below, rescission is unavailable against these moving defendants as a matter of law in the absence of actionable fraud.

## Argument

### I. THE FRAUD ALLEGATIONS IN THE COMPLAINT ARE NOT ACTIONABLE AS A MATTER OF LAW

According to the complaint, plaintiffs were fraudulently induced by Berkowitz's representations that the investments were "a bonanza," "a low-risk opportunity," and "fail safe," and that the principal amounts were "secure and would be promptly returned to them upon . . . maturation." By now, it is well, well established that such allegations are not actionable in fraud.

See, e.g., *World Series of Casino Gambling v. Donald King*, 1986 U.S. Dist. LEXIS 18521 (S.D.N.Y. October 27, 1986) at *13 ("'There are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity'"); *Rotstein v. Reynolds & Co.*, 359 F. Supp. 109, 113 (N.D. Ill. 1973) (statements that stock was "red hot" and plaintiff "could not lose" on the investment were "mere puffing and . . . not actionable"); *Zerman v. Ball*, 735 F.2d 15, 21 (2d Cir. 1984 (characterizing investment as "marvelous" does "not constitute [a] representation[] of fact that could be actionable"); *Serbalik v. General Motors Corp.*, 246 A.D.2d 724, 667 N.Y.S.2d 503, 504 (3d Dept. 1998) (claim that product "'would perform excellently'" and was "'of high quality'" held "nothing more than innocent 'puffery'" and not actionable); 60A NY Jur2d, *Fraud*, Sect. 34 ("mere general commendations of the product sought to be sold . . . do not amount to actionable misrepresentations").

Accordingly, the allegations that Berkowitz touted the investments as "a bonanza" and the like, quoted above (and taken as true for purposes of this motion only) are "nothing more than the common puff of a salesman" and cannot give rise to liability. "The law does not give premiums for naivete." *Bowman v. Hartig*, 334 F. Supp. 1323, 1328 (S.D.N.Y. 1971).

Other of the alleged inducements, more factual in nature, could easily have been checked for veracity by plaintiffs – who, let us remember, admit that they sent money, on three occasions over an entire year, and then again six months later, without seeing or even asking to see a single piece of paper about their investments. Those include the alleged statements that the investments were "subject to personal guaranties by the officers of the Issuer Defendants" and that Berkowitz "was co-investing . . . according to the same terms and conditions applicable to Plaintiffs' investments." (The latter claim being especially curious since plaintiffs showed no interest at all

in any of the "terms and conditions" of their own investments.)

Again, the law in New York is clear and venerable:

> '[I]f the facts represented are not matters peculiarly within the [defendant's] knowledge, and the [plaintiff] has the means available to him of knowing, by the exercise of ordinary intelligence, the truth . . . of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.

*Danaan Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 603 (1959), citing *Schumaker v. Mather*, 133 N.Y. 590, 596 (1892). Both the purported guaranties and Berkowitz's own participation could easily have been verified, with minimal effort by plaintiffs, merely by requesting and comparing the applicable documentation of their own and Berkowitz's investments. They chose not to do so and cannot now hold Berkowitz responsible for their losses.

For example, in *Stuart Silver Associates v. Baco Development Corp.*, 245 A.D.2d 96, 665 N.Y.S.2d 415 (1st Dept. 1997), plaintiffs claimed to have been promised both "a guaranteed 8% return" and that "there were no substantial risks associated with the project" in which they were investing. One of the plaintiffs, Lorraine Borden, admitted that "she neither read [the offering materials] nor consulted with her attorney, accountant, or financial advisor before investing in the . . . project"; nor did she request any "supporting documentation for the financial projections" or "otherwise conduct[] . . . inquiries into the nature of the project and the reliability of the promoter." The court held that "even if we assume [plaintiff] made all of the disputed statements and intended to induce reliance thereupon, plaintiffs have failed to state a fraud claim because they cannot show that their reliance was justified" (665 N.Y.S.2d at 417-18). Plaintiffs

> should have understood the risks of investing . . . without conducting a 'due

> diligence' investigation or consulting their lawyers or accountants. In fact, Lorraine Borden did not even read the prospectus, the implication being that she entered into this venture based on [defendant's] alleged oral promises alone. . . . [S]uch reliance is not reasonable. (id.)

Similarly, "[a]n investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth. . . . [Securities fraud] liability will not be imposed when an investor's conduct rises to the level of recklessness." *Brown v. E.F. Hutton*, 991 F.2d 1020, 1031-32 (2d Cir. 1993). In that case, the Second Circuit held that plaintiffs' "reliance on [alleged] oral statements . . . as to the . . . character of the investment is not justified as a matter of law [because] they are contradicted by the offering materials sent to [them]" (describing a prospectus as "perhaps the primary resource an investor should consult in seeking . . . information [about risk]"). Here, plaintiffs were much more "reckless" than the plaintiffs in *Brown*, who ignored some warning language, whereas Lowy and Maloul did not even bother to ask for anything at all concerning the terms and conditions under which they were sending money. The Supreme Court held more than a century ago that "[t]he means of knowledge are the same thing in effect as knowledge itself" (*Wood v. Carpenter*, 101 U.S. 135, 143 (1879)), and here plaintiff had the easy means of knowing the truth but deliberately chose not to do so.

In *Curran, Cooney, Penney v. Young & Koomans*, 183 A.D.2d 742, 583 N.Y.S.2d 478, 479 (2d Dept. 1992), the court held that a plaintiff who "proceeded with [a] transaction without securing the available documentation . . . willingly assumed the business risk that the facts may not have been as represented." See also, e.g., *UST Private Equity Investors Fund v. Salomon Smith Barney*, 288 A.D.2d 87, 733 N.Y.S.2d 385, 386 (1st Dept. 2001) (plaintiff who "failed to

make use of the means of verification that were available to it, such as reviewing the files of the other parties, . . . cannot claim to have justifiably relied" on alleged misrepresentations); *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 638 N.Y.S.2d 11, 14 (1st Dept. 1996) (plaintiffs "had a duty to exercise ordinary diligence" and "clearly had the means available to them to ascertain [the] financial condition [of the business in which they were investing]," and their failure "to conduct . . . some form of independent due diligence" precluded justifiable reliance on alleged misrepresentations).

Thus the second cause of action, for "common law fraud," does not state a claim upon which relief can be granted.

## II. THE FRAUD ALLEGATIONS DO NOT SATISFY RULE 9(b) IN ANY EVENT

There are close cases under Rule 9(b). This is not one of them. FRCP 9(b) requires, of course, that "In all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." This has been held to require, at a minimum, "the time, place, speaker, and content of the alleged misrepresentations" (see, e.g., *DiVittorio v. Equidyne*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

As noted above, although plaintiffs allege a host of misrepresentations over an eleven-month period, they never specify when the statements were made, nor where they were made, nor to whom they were made, nor the manner in which they were made. More fundamentally, they allege that the exact same misstatements were made as to each of three separate investments over that eleven-month period. That is inherently not credible, and plaintiffs do not even purport to offer any details (such as "Berkowitz said precisely this, to this person, at this location, in this

manner, on or about this date . . ."). In the absence of such specific allegations, these generalized allegations are the antithesis of the required particularity and should be dismissed on that basis alone. See, e.g., *Howard v. Galesi*, 1987 U.S. Dist. LEXIS 9117 (S.D.N.Y. October 5, 1987) at *8-9 (complaint "does not identify to whom [defendants] spoke" nor does it "identify with specificity who said what to whom").

This utter lack of particularity is an independent ground to dismiss the fraud claim.

## III. RESCISSION IS UNAVAILABLE AGAINST THESE DEFENDANTS IN THE ABSENCE OF ACTIONABLE FRAUD

The moving defendants are not in contractual privity with the plaintiffs, because plaintiffs' investments were made with the issuer defendants. They should therefore look first to the issuers, who received their money, for the remedy of rescission. If rescission cannot be obtained from the issuers, equivalent damages could be assessed against non-contracting defendants only if they defrauded the plaintiffs. See, e.g., *Gordon v. Burr*, 506 F.2d 1080, 1083-84 (2d Cir. 1974); see also *Pinter v. Dahl*, 486 U.S. 622, 643 & n.23 (1988).

Accordingly, because plaintiffs' complaint does not state a claim for fraud as discussed above, there is no viable claim for rescission against the moving defendants as a matter of law.

## Conclusion

For the reasons set forth above, the moving defendants respectfully request that the complaint be dismissed as against them in its entirety.

Dated: November 21, 2007

GERSTEN SAVAGE LLP
Attorneys for Defendants Ivan Berkowitz, Great Court Capital, LLC and SD Partners, LLC

By: /s/ Steven R. Popofsky
Steven R. Popofsky
600 Lexington Avenue
New York, New York 10022
(212) 752-9700