UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AVNER MALOUL and ALLEN LOWY,

                 Plaintiff,                  07 Civ. 8525 (LBS)

    -against-

IVAN BERKOWITZ, GREAT COURT
CAPITAL, LLC, SD PARTNERS, LLC,
UTIX GROUP, INC., VSUS TECHNOLOGIES,
INC., and SUNSET BRANDS, INC.,

                 Defendants.
-----------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

**GERSTEN SAVAGE LLP**
**600 LEXINGTON AVENUE**
**NEW YORK, NEW YORK 10022**
**212-752-9700**

# **Table of Contents**

**Page**

Table of Authorities..............................................................................................................i

Preliminary Statement...........................................................................................................1

The Relevant Factual Allegations.........................................................................................2

Argument................................................................................................................................5

    I. THE FRAUD ALLEGATIONS IN THE AMENDED COMPLAINT
    ARE NOT ACTIONABLE AS A MATTER OF LAW......................................................5

    Non-Actionable "Puffing"..................................................................................................5

    Plaintiffs Cannot Establish Justifiable Reliance Under the Venerable Rule
    of Schumaker v. Mather......................................................................................................6

        There is No Exception in the Caselaw For Alleged Representations as to
        Something the Defendant Himself Claimed to Have Done...................................11

        Logic Does Not Support Creating Such an Exception...........................................12

    II. RESCISSION IS UNAVAILABLE AGAINST THESE DEFENDANTS
    GIVEN THE ABSENCE OF OTHERWISE ACTIONABLE FRAUD............................14

Conclusion............................................................................................................................14

# Table of Authorities

**Cases**                                                                                                    **Pages**

*Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 638 N.Y.S.2d 11 (1st Dept. 1996)..................10

*Banque Arabe v. Maryland Nat'l Bank*, 57 F.3d 146 (2d Cir. 1995)...............................................8

*Belin v. Weissler* (S.D.N.Y. July 14, 1998), No. 97 Civ. 8787 (RWS),
1998 U.S. Dist. LEXIS 10492.............................................................................................8, 9, 12

*Brown v. E.F. Hutton*, 991 F.2d 1020 (2d Cir. 1993)................................................................9, 10

*Curran, Cooney, Penney v. Young & Koomans*, 183 A.D.2d 742,
583 N.Y.S.2d 478 (2d Dept. 1992)..............................................................................................10

*Danaan Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599 (1959)..............................6, 11

*Gordon v. Burr,* 506 F.2d 1080 (2d Cir. 1974)............................................................................14

*Hartford Accident & Indemnity Co. v. Kranz,* 7 A.D.2d 604,
184 N.Y.S.2d 918 (3d Dept. 1959)................................................................................................7

*Marine Midland Bank v. Palm Beach Moorings, Inc.* 61 A.D.2d 927,
403 N.Y.S.2d 15 (1st Dept. 1978)............................................................................................8

*Most v. Monti* (N.Y. App. Div. 1982) 91 A.D.2d 606, 456 N.Y.S.2d 427.....................................8

*Pinney v. Beckwith*, 202 A.D.2d 767, 608 N.Y.S.2d 738 (3rd Dept. 1994)....................................8

*Pinter v. Dahl*, 486 U.S. 622 (1988)............................................................................................14

*Premier Lending Services v. Haim Yehezkel*, 291 A.D.2d 544,
737 N.Y.S.2d 661 (2d Dept. 2002)..............................................................................................11

*Rodas v. Manitaras*, 159 A.D.2d 341, 552 N.Y.S.2d 618 (1st Dept. 1990)................................14

*Rotstein v. Reynolds & Co.,* 359 F. Supp. 109 (N.D. Ill. 1973).......................................................5

*Schumaker v. Mather*, 133 N.Y. 590 (1892)....................................................................6, 11, 13

*Serbalik v. General Motors Corp.*, 246 A.D.2d 724, 667 N.Y.S.2d 503
(3d Dept. 1998).................................................................................................................................5

*Stuart Silver Associates v. Baco Development Corp.,* 245 A.D.2d 96,
665 N.Y.S.2d 415 (1st Dept.1997)...................................................................................7

*UST Private Equity Investors Fund v. Salomon Smith Barney*, 288 A.D.2d 87,
733 N.Y.S.2d 385 (1st Dept. 2001)...............................................................................10

*Waksman v. Cohen*, 2002 U.S. Dist. LEXIS 21209 (S.D.N.Y. November 5, 2002)...................8, 9

*Wood v. Carpenter*, 101 U.S. 135 (1879)....................................................................10

*World Series of Casino Gambling v. Donald King*, 1986 U.S. Dist.
LEXIS 18521 (S.D.N.Y. October 27, 1986) ...................................................................5

*Zerman v. Ball,* 735 F.2d 15 (2d Cir. 1984)...................................................................5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AVNER MALOUL and ALLEN LOWY,

              Plaintiff,                     07 Civ. 8525 (LBS)

    -against-

IVAN BERKOWITZ, GREAT COURT
CAPITAL, LLC, SD PARTNERS, LLC,
UTIX GROUP, INC., VSUS TECHNOLOGIES,
INC., and SUNSET BRANDS, INC.,

              Defendants.
------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

      Defendants Ivan Berkowitz, Great Court Capital, LLC, and SD Partners, LLC, by their

undersigned counsel, respectfully submit this memorandum of law, together with the transmittal

affidavit of Steven Popofsky, in support of their motion to dismiss the amended complaint as

against them for failure to state a claim upon which relief can be granted.

### Preliminary Statement

      Plaintiffs amended their complaint to address their 9(b) problem, and deleted the patently

non-actionable allegations that they were fraudulently induced by representations that their

investments were a "bonanza" and "fail-safe." But the more fundamental and fatal deficiency in

their first complaint was uncurable: They did literally <u>zero</u> to verify the representations on which

they claim to have relied.

      This motion is not about "the extent of due diligence," as plaintiffs' counsel has tried to

claim. It is about whether plaintiffs can maintain their fraud claim having done none at all. In

the first complaint, they candidly admitted (in fact proudly proclaimed) that "Plaintiffs invested solely based on representations made by [defendant Ivan] Berkowitz. They were not provided with [and do not allege to have asked for] any written information about the Investments in advance of committing funds." The amended complaint has omitted that language but cannot change the underlying facts – they claim to have relied on representations that the investments were personally guaranteed by the issuers' principals, and that Berkowitz was co-investing on the same terms and conditions, but they did nothing whatsoever to even <u>try</u> to find out if any of that was true.

It would have been easy to ask, and easy to get (or to be refused, which would be a different case) readily available documentation such as copies of guarantees, promissory notes, or other investment documents. Plaintiffs chose not to do so, over eighteen months during which they made four separate investments. Any supposed reliance was therefore unreasonable as a matter of law; and the fact that one of the alleged representations concerned Berkowitz's own conduct is not (as discussed below) an exception to the general rule of law that dooms plaintiffs' action.

### The Relevant Factual Allegations

Plaintiffs allege that the moving defendants fraudulently induced them, during the 18-month period from November 2003 through April 2005, to invest a total of $725,000 in three companies known as Utix, VSUS, and Sunset Brands. (See paragraphs 26, 37, 50, and 62 of the amended complaint, which is annexed to the accompanying transmittal affidavit of Steven Popofsky as Exhibit A.) Those companies are also named as defendants but are not movants on this motion.

Plaintiff Lowy has known Berkowitz since the early 1980s and, in the first complaint, admitted having previously made "several successful investments in early stage companies" through him.  (Ex. A at Para. 16; see also Para. 16 of the initial complaint, annexed to the Popofsky Aff. as Ex. B.)  The three investments at issue in this suit are now alleged to be "essentially worthless" (Ex. A at Para. 83); and, not surprisingly, Lowy is not complaining about those prior successful investments.

Plaintiffs allege that with respect to the first investment, Berkowitz told Lowy that he "had an opportunity to invest" and that "he wanted to keep most of the investment opportunity for himself, but . . . would let Lowy in on a 'small piece' of the investment due to his longstanding relationship with Lowy and out of a sense of appreciation for assistance that Lowy provided to Berkowitz's family on numerous occasions during the preceding years."  Lowy asked about letting two friends participate in the investment as well, and Berkowitz "initially expressed reluctance . . . but later relented."  (Ex. A at Paras. 18, 20)  One of those two friends is now a co-plaintiff in this action.

Berkowitz allegedly told plaintiff Lowy that "the investment principal was guaranteed by [the issuer's] officers," and "emphasized repeatedly that [he] would be co-investing along with [plaintiffs] according to the same terms."[1]  (Ex. A at Paras. 19, 24)  He is alleged to have made essentially the same representations with respect to two additional issuers on three separate occasions over the ensuing 18 months.  (Ex. A at Paras. 31, 34, 47, 48, 59, and 60)

During that entire period, plaintiffs admit to having continued to pour in money based on

---

[1]For purposes of this motion, we are of course required to accept that the representations were made and were false.

4

nothing more than Berkowitz's say-so. Although the amended complaint omits the first

complaint's admission that "[t]hey were not provided with [and do not allege to have asked for]

any written information about the Investments in advance of committing funds" (Ex. B at Para.

20), plaintiffs do not allege doing anything at all to verify <u>anything</u> they claim they were told.

Plaintiffs also maintain a half-hearted attempt to claim other fraudulent representations.

The most blatantly deficient ones have been omitted this time around (see Ex. B at Paras. 21, 31-

32, and 65, alleging that Berkowitz "touted" the investments as "fail safe" and a "bonanza" and

"emphasiz[ed] that [they were] low-risk opportunit[ies]"); but they still allege "the

misrepresentation that these were safe investments, in which the principal amounts were secure,"

that "the returns were going to be 'huge,'" that plaintiffs "could make above-market returns" if

they continued to invest with Berkowitz, that one of the investments was "even better" than the

other, and that he had "'access to very good deals'" and they were "'going to make a lot of

money together.'" (Ex. A at Paras. 31, 43, 46, 56, and 96)

Plaintiffs allege that Berkowitz did not disclose that he and his firms were being paid fees

by the issuer defendants (Ex. A at Paras. 22, 35, 49, and 61); that they were required to register as

broker-dealers but were not so registered (id. Paras. 85, 89); and that plaintiffs were unaware of

all of that until the spring of 2007 (id. Para. 82). Plaintiffs accordingly seek to rescind their

investments and to hold Berkowitz and his firms jointly and severally liable with the issuers for

such rescission (id. Paras. 92-94).

As noted on the prior motion, defendants would establish at trial, if necessary, that they

were not in violation of any registration requirements and that plaintiffs were fully aware of their

relationship with the subject issuers. For purposes of this motion addressed to the pleading,

5

however, as discussed in the Argument section below, rescission is unavailable against these moving defendants as a matter of law given the absence of otherwise actionable fraud.

### Argument

## I. THE FRAUD ALLEGATIONS IN THE AMENDED COMPLAINT ARE NOT ACTIONABLE AS A MATTER OF LAW

### Non-Actionable "Puffing"

The allegations that the investments were "safe" and "secure," that plaintiffs would earn "huge" and "above-market" returns, and that the deals were "very good" and they would "make a lot of money together" are all non-actionable "puffing." As set forth in defendants' first motion to dismiss (the briefs on which are annexed to the Popofsky affidavit as Exhibits C, D, and E respectively), "'[t]here are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity.'" *World Series of Casino Gambling v. Donald King*, 1986 U.S. Dist. LEXIS 18521 (S.D.N.Y. October 27, 1986) at *13; see also, e.g., 60A NY Jur2d, *Fraud*, Sect. 34 ("mere general commendations of the product sought to be sold . . . do not amount to actionable misrepresentations"); *Rotstein v. Reynolds & Co.*, 359 F. Supp. 109, 113 (N.D. Ill. 1973) (statements that stock was "red hot" and plaintiff "could not lose" on the investment were "mere puffing and . . . not actionable"); *Zerman v. Ball*, 735 F.2d 15, 21 (2d Cir. 1984 (characterizing investment as "marvelous" does "not constitute [a] representation[] of fact that could be actionable"); *Serbalik v. General Motors Corp.*, 246 A.D.2d 724, 667 N.Y.S.2d 503, 504 (3d Dept. 1998) (claim that product "'would perform excellently'" and was "'of high quality'" held "nothing more than innocent 'puffery'" and not actionable).

**Plaintiffs Cannot Establish Justifiable Reliance
Under the Venerable Rule of Schumaker v. Mather**

With respect to the alleged representations that there were personal guarantees and that Berkowitz was co-investing on the same terms and conditions, the law in New York is well-established:

> '[I]f the facts represented are not matters peculiarly within the [defendant's] knowledge, and the [plaintiff] has the means available to him of knowing, by the exercise of ordinary intelligence, the truth . . . of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.

*Danaan Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 603 (1959), citing *Schumaker v. Mather*, 133 N.Y. 590, 596 (1892).  Plaintiffs have not challenged the *Schumaker* rule itself, but merely claimed it does not apply here because "the question of the <u>extent</u> of due diligence is inherently variable and fact specific," and "'[w]hether plaintiffs engaged in <u>enough due diligence</u> . . . is a question of fact for a jury to decide.' . . . At the motion to dismiss stage of this case, . . . this Court is not in a position to address the issue of the <u>adequacy</u> of Plaintiffs' due diligence. . . . Plaintiffs were not under any legal obligation to request written proof from Berkowitz that he was indeed co-investing or concerning the supposed guaranties" (Ex. F to the Popofsky Aff. (the transcript of oral argument on the first motion to dismiss) at 14-15; Ex. D at 6-7, 10-11 (emphases added)).

Plaintiffs are precisely wrong.  The "extent" of what they were obligated to do is indeed "variable" and "fact-specific" and might be difficult to adjudicate on a motion to dismiss; but in fact they admit they did <u>nothing at all</u>.  The "[in]adequacy" of <u>that</u> is something that the Court most certainly <u>is</u> in a "position to address" as a matter of law.  Both the purported guarantees and

Berkowitz's own participation could easily have been verified, with minimal effort by plaintiffs, merely by requesting some simple documentation – the guarantees themselves, and investment documents demonstrating Berkowitz's own commitment.  With regard to the co-investing in particular, plaintiffs Lowy and Maloul received promissory notes, stock certificates and warrants, and the burden on them would have been negligible to have requested – sometime during the 18 months and multiple investments – to see Berkowitz's own promissory notes, or some (any) other indicia of his supposed co-investment.

It is, again, important to note that the "extent" of such required verification is not at issue here.  If plaintiffs had asked for something and been denied, or asked for something and gotten incomplete or ambiguous responses, that might have raised legitimate "fact specific" issues not suitable for disposition as a matter of law.  But that is not what happened here; they admittedly did <u>nothing</u>, and they want to have it both ways: when Berkowitz made them money, they were evidently quite content to invest blindly, but when he lost them money, they want to cry "fraud" and make him insure their losses.  The law does not so easily permit such "heads I win, tails you lose" gamesmanship.  "With the opportunity to obtain knowledge of the facts, one cannot sit idly by to reap the harvest, if plentiful, but in the event of scarcity, charge fraud." *Hartford Accident & Indemnity Co. v. Kranz*, 7 A.D.2d 604, 184 N.Y.S.2d 918, 921 (3d Dept. 1959).

For example, in *Stuart Silver Associates v. Baco Development Corp.*, 245 A.D.2d 96, 665 N.Y.S.2d 415 (1st Dept. 1997), plaintiffs claimed to have been promised both "a guaranteed 8% return" and that "there were no substantial risks associated with the project" in which they were investing.  One of the plaintiffs, Lorraine Borden, admitted that "she neither read [the offering materials] nor consulted with her attorney, accountant, or financial advisor before investing in the

8

. . . project"; nor did she request any "supporting documentation for the financial projections" or "otherwise conduct[] . . . inquiries into the nature of the project and the reliability of the promoter." The court held that "even if we assume [plaintiff] made all of the disputed statements and intended to induce reliance thereupon, plaintiffs have failed to state a fraud claim because they cannot show that their reliance was justified" (665 N.Y.S.2d at 417-18):

> [Plaintiffs] should have understood the risks of investing . . . without conducting a 'due diligence' investigation or consulting their lawyers or accountants. In fact, Lorraine Borden did not even read the prospectus, the implication being that she entered into this venture based on [defendant's] alleged oral promises alone. . . . [S]uch reliance is not reasonable. (id.)

Indeed, "New York courts have repeatedly found that reasonable reliance was absent where a party failed to . . . secure available documentation which would have otherwise armed it with the truth." *Waksman v. Cohen*, 2002 U.S. Dist. LEXIS 21209 (S.D.N.Y. November 5, 2002) at *20-21:

> For example, in [*Pinney v. Beckwith*, 202 A.D.2d 767, 608 N.Y.S.2d 738, 739 (3rd Dept. 1994)], the Appellate Division . . . found that 'the element of reasonable reliance' was 'absent as a matter of law' where a simple inquiry into town records (i.e. 'the barest of precautions'), would have disclosed the falsity of a defendant's representations. . . . Similarly, reliance was absent in *Marine Midland Bank v. Palm Beach Moorings, Inc.* [61 A.D.2d 927, 403 N.Y.S.2d 15, 17, (1st Dept. 1978),] where the party had access to a corporation's records and the opportunity to examine those records but failed to take advantage of that opportunity.  *See also Banque Arabe* [*v. Maryland Nat'l Bank*, 57 F.3d 146, 157-158 (2d Cir. 1995)], affirming the dismissal of a fraudulent concealment claim where the plaintiff had access to sources which would have alerted it to all of the information it needed to know yet it failed to request such information); *Belin v. Weissler* (S.D.N.Y. July 14, 1998) No. 97 Civ. 8787 (RWS), 1998 U.S. Dist. LEXIS 10492, at *14-*18 (plaintiff's reliance was neither reasonable nor justified where he had the ability to secure and review relevant documentation but failed to do so); *Most v. Monti* (N.Y. App. Div. 1982) 91 A.D.2d 606, 456 N.Y.S.2d 427, 428 (affirming the dismissal of plaintiffs' fraud claim where the information relating to the subject matter of the fraud was "readily available to plaintiffs upon their making reasonable inquiry" yet they unreasonably failed to investigate the

truth of the matter).

In the *Belin v. Weissler* case cited above, 1998 U.S. Dist. LEXIS 10492, plaintiff invested money in a Broadway show, purportedly in reliance on defendant's representation that the show was insured in the event that its star was unable to perform. Plaintiff never sought to verify that information, and later sued for fraud when it turned out to have been false. The court found the necessary element of justifiable reliance absent and dismissed the complaint (id. at *16-18):

> Belin had an obligation – if, as Belin contends, he was only investing . . . based on representations that Tommy Tune was insured for $5.8 million – to secure and review a copy of the insurance policy upon which his investment decision was allegedly premised. . . . By proceeding to make an investment without asking for a copy of the policy, Belin 'willingly assumed the business risk' that the amount of insurance coverage was as represented by [defendant].

So too here. Lowy and Maloul could merely have asked for some documentary verification of the facts "upon which [their] investment decision was allegedly premised." They consciously chose not to do so, however (on several occasions over 18 months), and therefore by "proceeding to make [their] investments without [so] asking," they quite "'willingly assumed the business risk'" that the facts were as represented to them.

Similarly, "[a]n investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth. . . . [Securities fraud] liability will not be imposed when an investor's conduct rises to the level of recklessness." *Brown v. E.F. Hutton*, 991 F.2d 1020, 1031-32 (2d Cir. 1993). In that case, the Second Circuit held that plaintiffs' "reliance on [alleged] oral statements . . . as to the . . . character of the investment is not justified as a matter of law [because] they are contradicted by the offering materials sent to [them]" (describing a prospectus as "perhaps the primary resource an investor should consult in

seeking . . . information [about risk]"). Here, plaintiffs were much more "reckless" than the plaintiffs in *Brown*, who ignored some warning language, whereas Lowy and Maloul did not even bother to ask for anything at all concerning the terms and conditions under which they were sending money. The Supreme Court held more than a century ago that "[t]he means of knowledge are the same thing in effect as knowledge itself" (*Wood v. Carpenter*, 101 U.S. 135, 143 (1879)), and here plaintiff had the easy means of knowing the truth but deliberately chose not to do so.

And in *Curran, Cooney, Penney v. Young & Koomans*, 183 A.D.2d 742, 583 N.Y.S.2d 478, 479 (2d Dept. 1992), the court held that a plaintiff who "proceeded with [a] transaction without securing the available documentation . . . willingly assumed the business risk that the facts may not have been as represented." See also, e.g., *UST Private Equity Investors Fund v. Salomon Smith Barney*, 288 A.D.2d 87, 733 N.Y.S.2d 385, 386 (1st Dept. 2001) (plaintiff who "failed to make use of the means of verification that were available to it, such as reviewing the files of the other parties, . . . cannot claim to have justifiably relied" on alleged misrepresentations); *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 638 N.Y.S.2d 11, 14 (1st Dept. 1996) (plaintiffs "had a duty to exercise ordinary diligence" and "clearly had the means available to them to ascertain [the] financial condition [of the business in which they were investing]," and their failure "to conduct . . . some form of independent due diligence" precluded justifiable reliance on alleged misrepresentations).

**There is No Exception in the Caselaw**
**For Alleged Representations as to Something**
**the Defendant Himself Claimed to Have Done**

At oral argument on the first motion to dismiss, the Court raised the question whether

there "might be an exception to the general rule [of *Schumaker v. Mather*]" where "the alleged

misrepresentation is of something which the defendant [said he] had done, not something that

was happening to [a] company or some third party." (Ex. F at 6-7)  Plaintiffs had not raised the

possibility of such an exception, but the Court, suggesting that one might exist regarding the "co-

investing" representation – although not the "guarantee" representation (id. at 3) – inquired, "Do

you have a case [applying the *Schumaker v. Mather* rule] in which the misrepresentation is with

respect to something that the defendant said he had done?" (id. at 7).  The Court directed the

parties to focus on that question when briefing the anticipated motion to dismiss the amended

complaint.

Defendants have not found any case discussing that issue per se – which by itself would

indicate there is no such exception – but we have found two cases with such a fact pattern; and in

those cases, the courts assumed without discussion that the general rule would apply.  In *Premier*

*Lending Services v. Haim Yehezkel*, 291 A.D.2d 544, 737 N.Y.S.2d 661 (2d Dept. 2002),

"defendants alleged that they were fraudulently induced into contracting for the plaintiff's

services by the plaintiff's false representation that it possessed an agreement to purchase the

property."  Defendants refused to pay plaintiff's fee "after they determined that the plaintiff's

[claimed] purchase agreement did not exist."  Citing *Danann Realty*, supra, which relied on

*Schumaker v. Mather*, the appellate division held that defendants "failed to establish that they

relied on, or were justified in relying on, the alleged misrepresentation of the plaintiff that it

12

possessed a purchase agreement for the property."

In the same vein, in the *Belin v. Weissler* case discussed above, 1998 U.S. Dist. LEXIS 10492, defendant Weissler was the principal of the general partnership that was producing the Tommy Tune show. It was therefore his responsibility to procure insurance on the show's star, and the representation that Mr. Tune was insured for $5.8 million was thus one "with respect to something that the defendant said he had done" (Ex. F at 7). As noted above, plaintiffs were not permitted to allege reliance on that representation without simply "asking for a copy" of the document that would have verified its truth.

That is exactly what plaintiffs in this case could have done and chose not to do, and it should be as fatal to their claim as it was to the plaintiff in *Belin*. If the possible "exception" broached by this Court exists, then it would have applied, or been referred to, in *Belin v. Weissler* and in *Premier Lending*. Unless plaintiffs have found caselaw that defendants have missed, no court has asserted or applied such an "exception."

**Logic Does Not Support**
**Creating Such an Exception**

Where verification is as easy as it was here – plaintiffs could merely have "ask[ed] for a copy" of Berkowitz's promissory note, or other evidence of his "co-investment" – there is no logical reason to differentiate between representations as to defendant's own conduct and representations as to external facts. The exact same principle applies: A plaintiff who has the means to verify, and chooses not to do so, cannot claim justifiable reliance on a misrepresentation.

If the representation were unverifiable, or difficult to verify, because of its nature, that might be different. But that is not this case. Similarly – and importantly – if a fiduciary relationship were involved, that would make everything different. A plaintiff might have every right to rely without verification on a representation made by a fiduciary, particularly one concerning something the fiduciary claimed to have done himself, by the very nature of the legal obligations imposed by that relationship. But plaintiffs here have not alleged a fiduciary relationship or obligation, and so any such analysis is simply inapplicable and for another case and another day.

The concerns raised by the Court at oral argument are appropriately viewed in that context; i.e. the inapplicability of a fiduciary analysis. The Court observed that "one would hope that the law . . . takes into consideration the way people normally act with each other," and that plaintiffs here seemed to have "relied on the good faith and integrity of their friend" (Ex. F at 7-8, 4-5). The *Schumaker v. Mather* rule, and applying that rule to this case, does not in any way contravene "the way people normally act with each other." All that well-established principle says is that – absent a fiduciary relationship – people are not entitled to blindly rely on others' good faith and integrity when they can easily verify the truth of what they are told and choose not to do so. Plaintiffs contend that they were "not under any legal obligation to request written proof from Berkowitz that he was indeed co-investing or concerning the supposed guaranties" (Ex. D at 10-11), and we are not arguing that in the abstract they were "obligat[ed]" to confront their friend and request anything at all. But the issue here is what they were obligated to do in order to permit a subsequent fraud claim; and what the law provides is, simply and logically, that if you choose to invest three-quarters of a million dollars based on representations you make no

14

attempt to verify, then you cannot claim justifiable reliance if those representations turn out to have been false.

That is an unexceptionable proposition, and it should be applied in this case to dismiss plaintiffs' claim for common-law fraud.

## II. RESCISSION IS UNAVAILABLE
## AGAINST THESE DEFENDANTS GIVEN
## THE ABSENCE OF OTHERWISE ACTIONABLE FRAUD

Both sides agreed on the first motion that the viability of plaintiffs' rescission claim as against these moving defendants was (in the words of plaintiffs' counsel) "derivative" of the viability of the fraud claim. (See pages 13-14 of plaintiffs' brief on the first motion, annexed to the Popofsky transmittal affidavit as Ex. D.) That is because the moving defendants are not in contractual privity with the plaintiffs, whose investments were made with the issuer defendants. They should therefore look to the issuers, who received their money, for the remedy of rescission. If rescission cannot be obtained from the issuers, equivalent damages could be assessed against non-contracting defendants <u>only</u> if they defrauded the plaintiffs. See, e.g., *Gordon v. Burr*, 506 F.2d 1080, 1083-84 (2d Cir. 1974); see also *Pinter v. Dahl*, 486 U.S. 622, 643 & n.23 (1988).

Accordingly, because plaintiffs' complaint does not state a claim for fraud as discussed above, there is no viable claim for rescission against the moving defendants as a matter of law.

### Conclusion

In *Rodas v. Manitaras*, 159 A.D.2d 341, 552 N.Y.S.2d 618, 620 (1st Dept. 1990), plaintiffs were barred from claiming fraud where they had actually requested examination of certain records but were refused: "Plaintiffs could easily have protected themselves by insisting on an examination of the books as a condition of closing." The Court here need not go that far,

15

and need not explore the "extent" of precisely what plaintiffs might have requested and received or what they would be required to review. The facts of this case are that they requested nothing at all, and the Court is merely being asked to hold that "nothing" is insufficient.

Accordingly, for the reasons set forth above, the amended complaint should be dismissed without leave to replead.

Dated: February 27, 2008

GERSTEN SAVAGE LLP
Attorneys for Defendants Ivan Berkowitz,
Great Court Capital, LLC and SD Partners,
LLC

By: _____
        Steven R. Popofsky
600 Lexington Avenue
New York, New York 10022
(212) 752-9700