Eric B. Fisher, Esq.
Morgenstern Jacobs & Blue, LLC
885 Third Avenue
New York, New York 10022
Telephone: (212) 750-6776
Facsimile: (646) 349-2816
Email: efisher@mjbllc.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

AVNER MALOUL and ALLEN LOWY,

    Plaintiffs,

    -against-

IVAN BERKOWITZ, GREAT COURT
CAPITAL, LLC, SD PARTNERS, LLC,
UTIX GROUP, INC., VSUS TECHNOLOGIES,
INC., and SUNSET BRANDS, INC.

    Defendants.

------------------------------------------------------------x

JUDGE SAND

07 Civ. 8525

**COMPLAINT**

    Plaintiffs, by their attorneys Morgenstern Jacobs & Blue, LLC, for their Complaint, allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as follows:

### SUMMARY OF THE ACTION

    1.    By this action, Plaintiffs seek to be made whole for investment losses suffered as a result of Defendants' wrongful conduct. Defendant Ivan Berkowitz, through certain affiliated entities, fraudulently induced Plaintiffs to purchase securities without disclosing the risks of those investments, and without disclosing that Berkowitz and the affiliated entities were acting as unregistered broker-dealers in violation of federal securities laws. The companies that issued these securities to Plaintiffs knew that

their investments had been actively solicited by Berkowitz and agreed to pay a fee to Berkowitz and/or his affiliated entities, even though the issuer companies knew that none of the Berkowitz-affiliated entities were registered broker-dealers authorized to sell securities.

## VENUE AND JURISDICTION

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Count I arises under the Securities Exchange Act of 1934 (the "1934 Act").

3. This Court has pendent jurisdiction over the state law claim asserted in Count II.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

5. Plaintiff Avner Maloul is a resident of Great Neck, New York.

6. Plaintiff Allen Lowy is a resident of New York, New York.

7. Defendant Ivan Berkowitz resides at 1 West 72nd Street, New York, New York 10023.

8. Great Court Capital, LLC ("Great Court") is a New York corporation located at 444 Madison Avenue, 24th Floor, New York, New York 10022.

9. SD Partners, LLC ("SD Partners") is a Delaware corporation that transacts business in the State of New York and in this District.

10. Berkowitz is a principal of both Great Court and SD Partners. (Berkowitz, Great Court and SD Partners are collectively referred to herein as the "Berkowitz Defendants.")

11. Utix Group, Inc. ("Utix") is a Delaware corporation with its principal place of business at 7 New England Executive Park, Suite 610, Burlington, Massachusetts 01803.

12. VSUS Technologies, Inc. ("VSUS") is a Delaware corporation with its principal place of business at 902 Clint Moore Road, Suite 138, Boca Raton, Florida 33487.

13. Sunset Brands, Inc. ("Sunset") is a Nevada corporation with its principal place of business at 10990 Wilshire Boulevard, Los Angeles, California 90024.

14. Utix, VSUS and Sunset are collectively referred to herein as the "Issuer Defendants."

## FACTUAL ALLEGATIONS

15. This case concerns a series of investments made by Plaintiffs exclusively in reliance on false representations and material omissions knowingly made by the Berkowitz Defendants.

16. Berkowitz and Plaintiff Allen Lowy have known one another since the early 1980s. Over time, Berkowitz established a relationship of trust with Plaintiff Allen Lowy by persuading Lowy to make several successful investments in early stage companies.

17. Berkowitz then betrayed that trust by unlawfully inducing Plaintiffs Allen Lowy and Avner Maloul to make a series of investments in the Issuer Defendants.

18. Specifically, the Berkowitz Defendants wrongfully solicited the following securities investments (the "Investments") from Allen Lowy and Avner Maloul:

3

a. <u>November 2003</u>: Lowy and Maloul each invested $85,000 in VSUS, in exchange for promissory notes and Class A warrants to purchase shares;

b. <u>May 2004</u>: Lowy invested $97,500 and Maloul invested $102,500 in Utix, in exchange for 15% promissory notes and five year warrants to purchase shares;

c. <u>October 2004</u>: Lowy invested $50,000 in VSUS, and Maloul invested $65,000 in VSUS, in exchange for promissory notes and warrants to purchase shares; at or about this time, Maloul also invested $100,000 in Sunset Brands, in exchange for convertible stock and warrants; and

d. <u>April 2005</u>: Lowy invested $40,000 and Maloul invested $100,000 in VSUS, in exchange for convertible notes and warrants to purchase shares.

19. Thus, the total principal amount of the Investments wrongfully solicited by the Berkowitz Defendants is $725,000.

20. With regard to each of the Investments, Plaintiffs invested solely based on representations made by Berkowitz. They were not provided with any written information about the Investments in advance of committing funds.

21. Shortly in advance of each investment commitment made by Plaintiffs, Berkowitz would tout the investment, emphasizing that it was a low-risk opportunity. This representation was false.

4

22. Berkowitz told Plaintiffs that their principal investment and the interest payments under the notes were secure and subject to personal guaranties by the officers of the Issuer Defendants. These representations were false.

23. Berkowitz also consistently represented to Plaintiffs that the principal amount of their Investments was secure and would be promptly returned to them upon the Investments' maturation. This too was false.

24. Berkowitz's illegal conduct also includes his failure to disclose that the Issuer Defendants were paying the Berkowitz Defendants a fee to act as securities brokers and raise capital for the Issuer Defendants through the sale of securities.

25. The Berkowitz Defendants' conduct runs afoul of federal securities laws because the Berkowitz Defendants were not registered broker-dealers.

26. Thus, the Berkowitz Defendants could not legally sell the Issuer Defendants' securities to Plaintiffs.

27. These violations of the broker-dealer registration requirement give rise to a claim for rescission pursuant to Section 29(b) of the 1934 Act.

28. Further, Berkowitz made material misrepresentations to Plaintiffs in order to induce them to invest in the Issuer Defendants.

29. Among other misrepresentations, Berkowitz told Plaintiffs that he was co-investing in the Issuer Defendants according to the same terms and conditions applicable to Plaintiffs' investments. Indeed, Berkowitz claimed that, because the total amount of the investment was fixed, by allowing Plaintiffs to participate in this investment, Berkowitz was reducing the amount of his own investment in order to "make room" for Plaintiffs to participate in these opportunities. These statements were not true.

30. Moreover, Berkowitz never disclosed that he was being compensated by the Issuer Defendants, and that his fee was contingent on his raising capital for the Issuer Defendants.

31. Knowing that Plaintiffs were relying exclusively on Berkowitz's advice and the relationship of trust he had established with them, Berkowitz made untrue statements about the prospects for the investments at issue, telling Plaintiffs that the investments were fail safe and that the principal amount of their Investments was secure.

32. Berkowitz also told Plaintiffs that the investments were a "bonanza" that he was only making available to Plaintiffs because they were "friends."

33. Berkowitz told Plaintiffs that they had to commit their funds quickly or they would lose out on the opportunity to participate in the investment.

34. In fact, the investments that Berkowitz actively solicited from Plaintiffs were high risk investments that were not suitable for Plaintiffs.

35. The process of turning over the funds always followed a similar pattern set forth briefly below.

36. Plaintiffs' funds were transferred to the law firm of Bondy & Schloss LLP, which was acquired by Hodgson Russ LLP in or about July 2005 (the "Law Firm"), at the request of, and based upon representations made by, Berkowitz.

37. The attorney at the Law Firm who handled the Investments was Jeffrey Rinde. As per Berkowitz's instructions, the funds were transmitted by Plaintiffs to the Law Firm in trust to be paid over to the Issuer Defendants, in exchange for the securities at issue.

38. At the time of the Investments, it was not clear to Plaintiffs what persons or entities were clients of the Law Firm. Plaintiffs were led to believe that the Law Firm was representing their interests at the request of Berkowitz. Upon information and belief, however, the Law Firm was also representing the Issuer Defendants in the transactions.

39. Shortly before payments were due to Plaintiffs pursuant to the purported terms of the Investments, Plaintiffs would receive word from the Issuer Defendants that the payments could not be made on time, and offering the Plaintiffs a higher rate of interest and the opportunity to purchase more stock from the Issuer Defendants.

40. Plaintiffs had no alternative but to accept these terms that were unilaterally imposed upon them in the hope of recouping their investment. Contrary to what Berkowitz had previously represented to Plaintiffs, even the principal amount of their Investments was in jeopardy.

41. Berkowitz never disclosed that he was acting as a paid broker; never disclosed the risks of these investments; and never inquired into whether these investments were suitable for Plaintiffs.

42. Upon information and belief, Plaintiffs are not the only investors who were subjected to Berkowitz fraudulent scheme with regard to the investments at issue.

43. When Plaintiffs became concerned about the soundness of these investments they requested an in-person meeting with Berkowitz, which was held in the offices of Great Court in the winter of 2007.

44. At that meeting, Berkowitz acknowledged having touted these investments to Plaintiffs, but told Plaintiffs that he too had lost money on these Investments. True to form, Berkowitz began describing yet additional investments in Europe that he was

7

willing to make available to Plaintiffs to "make it up" to them. At no time did Berkowitz ever disclose that, in fact, he had received significant fees from the Issuer Defendants in exchange for successfully soliciting Plaintiffs' funds for the Investments.

45. Subsequently, in a spring 2007 meeting with Jeffrey Rinde to express concern about their Investments, Plaintiffs recounted their earlier meeting with Berkowitz. Rinde expressed surprise that Berkowitz would claim not to have made money on the Investments. Indeed, Rinde explained to Plaintiffs that the Berkowitz Defendants had been paid fees by the Issuer Defendants in exchange for soliciting the Investments.

46. Before the spring 2007 meeting referred to in the preceding paragraph, Plaintiffs were unaware of any facts that would give rise to a violation of the 1934 Act's broker-dealer registration requirements.

47. The Investments are now essentially worthless.

## COUNT I

### VIOLATION OF SECTION 15(a)(1) OF THE 1934 ACT AND RESCISSION PURSUANT TO SECTION 29(b) OF THE 1934 ACT

48. Plaintiffs repeat and reallege each and every allegation above as if set forth in full herein.

49. The Berkowitz Defendants acted as securities brokers within the meaning of Section 15(a)(1) of the Securities Exchange Act. 15 U.S.C. § 78o(a)(1).

50. Until their spring 2007 meeting with Jeffrey Rinde, Plaintiffs were not aware that the Berkowitz Defendants were acting as brokers and were led to believe that the Plaintiffs were co-investors on equal terms with the Berkowitz Defendants.

51.     The Issuer Defendants paid a fee to the Berkowitz Defendants for their services as securities brokers

52.     The Issuer Defendants knew that the Berkowitz Defendants were acting as securities brokers to sell the securities of the Issuer Companies.

53.     At all relevant times, none of the Berkowitz Defendants were registered with the U.S. Securities and Exchange Commission as brokers or dealers in accordance with Section 15(b) of the 1934 Act.

54.     The Issuer Defendants knew that the Berkowitz Defendants were not registered broker-dealers.

55.     The Berkowitz Defendants knew that they were not registered broker-dealers.

56.     Plaintiffs' investments in the Issuer Defendants are subject to rescission pursuant to Section 29(b) of the 1934 Act (15 U.S.C. § 78cc(b)), which provides that contracts made in violation of, *inter alia*, Section 15(b) of the 1934 Act shall be void.

57.     Accordingly, Plaintiffs' investments in the Issuer Defendants should be voided and the principal amount of their investment refunded to them, together with interest thereon.

58.     The Berkowitz Defendants and the Issuer Defendants are jointly and severally liable to Plaintiffs for the total principal amount of the investments, together with interest thereon.

## COUNT II

## COMMON LAW FRAUD

### (Against Berkowitz Defendants)

59. Plaintiffs repeat and reallege each and every allegation above as if set forth in full herein.

60. As set forth in detail above in paragraphs 21 through 32, the Berkowitz Defendants made material misrepresentations to Plaintiffs in connection with the Investments.

61. In addition, the Berkowitz Defendants failed to disclose that they were acting as unregistered broker-dealers and failed to disclose the known risks of the Investments.

62. All of the above misrepresentations and omissions were made knowingly or with extreme recklessness by the Berkowitz Defendants.

63. Berkowitz knew that the Berkowitz Defendants were acting as unregistered broker-dealers and yet failed to disclose that fact.

64. Berkowitz knew that the Berkowitz Defendants were to receive a fee from the Issuer Defendants in connection with the solicitation of investments and yet failed to disclose that fact.

65. Berkowitz knew that Plaintiffs were relying exclusively on information supplied by Berkowitz in connection with their decision to make the Investments, and yet he failed to disclose what he knew to be the risks of the Investments. Instead, he touted the Investments as fail safe and a "bonanza."

66.     Berkowitz made the above misrepresentations with a clear intent to induce Plaintiffs to invest so that he would earn an undisclosed fee from the Issuer Defendants.

67.     Plaintiffs made the Investments exclusively in reliance on the material misrepresentations and omissions of the Berkowitz Defendants.

68.     Plaintiffs have been damaged as a result of the Berkowitz Defendants' fraud because the Investments are now essentially worthless.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment:

A.      rescinding all of their investment contracts with the Issuer Defendants;

B.      ordering payment of compensatory damages by the Berkowitz Defendants, including an award of interest;

C.      awarding Plaintiffs' costs and fees in bringing this action; and

D.      awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: September 25, 2007

                                  MORGENSTERN JACOBS & BLUE, LLC

By: _____
      Eric B. Fisher
      885 Third Avenue
      New York, New York 10022

*Attorneys for Plaintiffs*