8137MALM

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   AVNER MALOUL and ALLEN LOWY,

4                  Plaintiffs,

5           v.                          07 Civ. 8525

6   IVAN BERKOWITZ, GREAT COURT
    CAPITAL, LLC, SD PARTNERS, LLC,
7   UTIX GROUOP, INC.,
    VSUS TECHNOLOGIES, INC.,
8   and SUNSET BRANDS, INC.,

9                  Defendants.

10  ------------------------------x

11                                      January 3, 2008
                                        2:15 p.m.
12
    Before:
13
                    HON. LEONARD B. SAND
14
                                        District Judge
15
                       APPEARANCES
16
    MORGENSTERN JACOBS & BLUE, LLC
17       Attorneys for Plaintiffs
    BY:  ERIC B. FISHER
18
    GERSTEN SAVAGE LLP
19       Attorneys for Defendants
    BY:  STEVEN R. POPOFSKY
20

21

22

23

24

25

8137MALM

1                    (Case called)

2                    (In open court)

3                    THE COURT:  You may be seated.  Who speaks for the

4        movant?

5                    MR. POPOFSKY:  Steven Popofsky from Gersten Savage

6        LLP.

7                    THE COURT:  I will hear you.

8                    MR. POPOFSKY:  Thank you.  Your Honor, there are I

9        think three things at issue on this motion.  Puffing, I'm going

10       to pass by unless you have any questions.  I think there are

11       certain types of representations that are not actionable,

12       they're not actionable without the need for discovery or

13       summary judgment, Bonanza, those types of things.  I think I

14       will leave it to the papers on that.

15                   THE COURT:  OK.

16                   MR. POPOFSKY:  I think the more complicated question,

17       although still I think dispositive, is the question of a couple

18       of more factual representations that I say needed to be

19       verified and weren't.

20                   There is a principle of law -- and the plaintiffs

21       don't dispute the principle -- that if a plaintiff has the

22       means to verify a representation and chooses not to do it, he

23       or she can't complain that they were defrauded into whatever

24       they did.

25                   THE COURT:  Let's talk about that for a moment.  In

8137MALM

1    the classic cases, the victim, the plaintiff, is told something

2    like you should invest in this company because they're about to

3    acquire something or they get a patent or do something.  Right?

4    The investor is told that somebody else is going to do

5    something, or has something, some attribute or event which is

6    going to cause the investment to be of great value.  And the

7    courts show very little sympathy towards the victim who doesn't

8    investigate that.

9         Now, this is a different situation, because the

10   representation which was allegedly made is not about what

11   somebody else was going to do but something that the defendant

12   said he had done or was going to do, invest an equal share of

13   his own money in the company.

14        MR. POPOFSKY:  I think there are two representations

15   in this complaint that fall in that category.  Your Honor

16   stated one.  The other one is that there were personal

17   guarantees by the principals of the issuers.  I think that does

18   fall --

19        THE COURT:  Well, that comes in the first one.

20        MR. POPOFSKY:  Yes.

21        THE COURT:  But how about the representation by

22   somebody who is thought of as being a friend who says I have or

23   I will --

24        MR. POPOFSKY:  I have.

25        THE COURT:  -- I have invested a like sum of money in

8137MALM

1    the company?

2              MR. POPOFSKY:  On the same terms and conditions.

3              THE COURT:  Yes.

4              MR. POPOFSKY:  I don't see a material --

5              THE COURT:  How do you verify that?  When your friend

6    tells you this is what I have done --

7              MR. POPOFSKY:  That's very simple.  I think that's a

8    simple answer, your Honor.  You ask either the person who is

9    telling you, or the company, to see the documentation of the

10   investment.  The same thing that you have done, the same thing

11   that you may be expecting to receive, you ask to see something

12   that he has done.  I think that's an easy request to make, it's

13   an easy thing to see.  If someone has in fact invested $100,000

14   or $700,000 over 18 months on four separate occasions, and

15   someone is telling you he has done the same thing, it's easy to

16   say let me see some verification of that -- if he cares.

17             THE COURT:  And the answer you get is "Don't you trust

18   me?  I'm your friend."  Right?

19             MR. POPOFSKY:  Well, that's not what's alleged here.

20   What's alleged here -- the difference, your Honor -- I don't

21   know if it's a difference -- but I think the key thing is that

22   the plaintiffs in this complaint not only admit but they

23   proudly proclaim that they did nothing, they asked no

24   questions.

25             THE COURT:  Because they relied on the good faith and

8137MALM

1    integrity of their friend.

2            MR. POPOFSKY:  That's correct.  And what would be the

3    point of the principle of law that if you have the means to

4    verify you must make use of them if you can just say I could

5    have easily found this out but I relied on my friend?  And they

6    didn't just rely once, your Honor.  And I think that's

7    important here.  This is four separate investments, according

8    to the complaint, four separate investments over 18 months.

9    So, every five months or so all of this is alleged to have

10   happened again.  If they really were interested, if they really

11   cared about whether Mr. Berkowitz was coinvesting --

12           THE COURT:  They were interested enough to put in the

13   money, right?  This is not --

14           MR. POPOFSKY:  Well, they were blindly doing,

15   according to them, whatever they were asked to do.  They claim

16   that he had made money for them in the past, so they were just

17   sending money.  But what I'm suggesting is I don't think they

18   were really interested in whether he was coinvesting or not.

19   But if they were --

20           THE COURT:  This is a motion to dismiss a complaint.

21   What basis do they have for saying that they didn't care?  This

22   one said, hey, I have done work for you in the past, here is

23   another opportunity and I am putting in X dollars; do you want

24   to put in that amount of money also?

25           MR. POPOFSKY:  And then they do it, and then six

8137MALM

1  months later they do it again, and then six months later they

2  do it again, and all during that time they never asked to see.

3  If that was important to them, they should have asked to see

4  some verification somewhere along the line.  They also had a

5  lawyer.

6          THE COURT:  Let's assume for the moment -- it's a

7  motion to dismiss a complaint, and I have to assume the facts

8  as alleged in the complaint.  Why would the defendant have said

9  that to the plaintiffs other than to induce them to make the

10 investment?

11         MR. POPOFSKY:  No, that would be why he would -- yes,

12 we are assuming the truth.  That's why he would say it.  But

13 the law requires of plaintiffs some minimal level of due

14 diligence.  The cases clearly state that.

15         THE COURT:  Well, do you have a case in which the

16 relationship between the plaintiff and the defendant was an

17 ongoing one, categorized by the plaintiff as being a friend, in

18 which the alleged misrepresentation is of something which the

19 defendant had done, not something that was happening to the

20 company or some third party?  I your friend am telling you that

21 I am putting in X thousand dollars, do you want to put it in

22 also?

23         MR. POPOFSKY:  Well, first of all, we're not talking

24 about an allegation of any fiduciary relationship.  And the

25 allegation in the complaint is not that they were friends; it's

8137MALM

1    that he said as your friend I'm telling you this.  No, I don't

2    believe I have a case that specifically says that someone who

3    characterized himself as a friend said it, but I don't think

4    the case law is so limited.

5        THE COURT:  Do you have a case in which the

6    misrepresentation is with respect to something that the

7    defendant said he had done?

8        MR. POPOFSKY:  I'm not sure, your Honor.  I would have

9    to look, because until you raised that as a distinction -- it

10   was not raised in the opposing brief, and it's not a

11   distinction that I had thought about.  I would have to look.

12       THE COURT:  I will give you an opportunity to think

13   about it, because I haven't either.

14       It occurred to me, however, that in a way people deal

15   with each other there may be -- and I am not at all adamant

16   about this -- when somebody in a professional context says that

17   he has done something, he has done something which makes you

18   eager to get on the same band wagon, and he had not done it,

19   I'm not aware of any case.

20       MR. POPOFSKY:  I understand that point.  I just don't

21   see why that's a legal principle distinction that would be an

22   exception to the general rule.  Why would that be an exception?

23   If it's--

24       THE COURT:  I think it might be an exception to the

25   general rule, because one would hope that the law at least

1    takes into consideration the way people normally act with each

2    other.  And if this was an instance in which somebody said, you

3    know, X corporation is about to be given a patent on a cancer

4    cure, that's something where one might expect inquiry.  But if

5    somebody with whom you have dealt with in the past before says

6    I tell you what I have done, I have taken X thousand dollars of

7    my money, and I have put it in this business, and you can come

8    in on the same terms --

9         MR. POPOFSKY:  Well, I have three points on that.  One

10   is I don't know that your cancer drug analogy, or any of those,

11   is actually -- to me those seem perhaps weaker, because that's

12   a question of inquiry.  Your Honor used the word inquiry, but

13   my motion is not based on inquiry, it's based on verification.

14   I think there is a difference between inquiry and verification.

15        If someone says we have a cancer drug that's about to

16   be approved, you could inquire or you could look into what

17   stage of approval it's in, but you can't really know if it's

18   going to be approved or not.  That's not something that you can

19   actually verify as a fact.

20        THE COURT:  What's the best, strongest evidence of

21   whether somebody has or has not done something?  Isn't it

22   whether he says this is what I've done?

23        MR. POPOFSKY:  No, no, the best evidence is a piece of

24   paper showing it.  If someone has invested, it would be easy

25   enough to see the check or the investment document.  It depends

8137MALM

1    on the nature of the investment, but there is always a piece of

2    paper.  And here there would have been at least four pieces of

3    paper.  So, I think it's easier than in your examples of what

4    other people have done, I think it's easier to verify.  When

5    someone says to you I have done this, it's real easy to say,

6    OK, show me, show me something that indicates that you did it.

7          And respectfully I would turn your case question

8    around, because we are talking I think about an exception to

9    the general rule.  I would say that plaintiff, if plaintiff is

10   going to adopt your Honor's argument and argue this

11   distinction, then plaintiff ought to come up with a case that

12   says something the defendant is alleged to have done is an

13   exception to the general rule, because we have a general rule.

14         THE COURT:  Except you are the movant, you have the

15   burden.

16         MR. POPOFSKY:  I do.  But I have a general rule that's

17   been the law in New York for at least 120 years.  There is

18   scores of cases that cite the general rule and apply it in all

19   sorts of different circumstances.  As we say, I don't know if

20   there is a specific case in this circumstance, but I know the

21   general rule, and I think it fits this type of situation.  It's

22   an easy thing to verify, and it went on --

23         THE COURT:  How do you verify?  He says I bought X

24   number of shares with my own money.  You call up the

25   corporation and say --

8137MALM

1          MR. POPOFSKY:  Or you could ask him, show me your

2     check, the simplest thing.  Show me a check or some

3     documentation of your investment.  Everybody has documentation

4     of an investment.  You don't give $700,000 without getting

5     something back.

6          Now, these plaintiffs didn't ask for anything ahead of

7     time, but I think in Mr. Fisher's brief he says they received

8     some papers afterwards.  It's not in the complaint, but he says

9     it would make sense if you are getting notes -- the allegations

10    are that they got promissory notes, so you would have

11    something.  It would be easy enough.  They have a promissory

12    note to Maloul and Lowy, so can we see a promissory note to

13    Berkowitz?  Or can we see your check?  Something.

14          THE COURT:  Hindsight makes us all wise.

15          MR. POPOFSKY:  And my third point is I don't think I'm

16    arguing against the way people normally act.  I think this

17    general rule does consider the way people normally act.  And I

18    agree that if somebody says to you I'm doing this, that's an

19    inducement.  There is no question that that's an inducement.

20    The question is whether there is some minimal level of

21    verification required.  And I don't think it's at odds with how

22    people normally act.

23          People are induced, but the law also holds some people

24    to some minimal level of verification.  And that's what they

25    should have done.  And, again, that's why the 18 months and the

8137MALM

1    four separate occasions I think is significant.  I think it

2    might be easier --

3        THE COURT:  Is there anything in that period of time

4    which should have alerted the plaintiffs to the fact that

5    something was wrong?

6        MR. POPOFSKY:  Yes.  They allege that each time -- let

7    me find it.  I will find the paragraph.  They allege that each

8    time they were told money wasn't coming in and they needed to

9    invest more money in order to protect their investment.  And

10   they had a lawyer who they claim they thought was their lawyer.

11   They were sending money to a lawyer, and they claim that they

12   thought he was their lawyer.

13        THE COURT:  Acting sort of as an escrow agent?

14        MR. POPOFSKY:  That's the allegation.  So if that

15   happened, then on several occasions over 18 months they weren't

16   getting what they thought; they were told to put more in.  They

17   could have gone to him.  They could have gone to the three

18   different issuers.  They could have gone to the lawyer, who

19   they thought was their own lawyer, and say what's going on

20   here.

21        The paragraph I was talking about is paragraph 39.

22   They said shortly before payments were due to plaintiffs

23   pursuant to the purported terms of the investments, plaintiffs

24   would receive word from the issuer defendants that the payments

25   could not be made on time, offering a higher rate of interest

8137MALM

1    and the opportunity to purchase more stock.

2            So, in answer to your question, yes, I think things

3    did occur over the 18 months that put them on notice, and they

4    willfully shut their eyes over 18 months.  They didn't care

5    about anything.  They were just sending money blindly.  I think

6    the law requires a minimal level above that.

7            We are not talking about the extent of due diligence.

8    That's what his brief talked about, and I understand completely

9    on a motion to dismiss you can't get into was the due diligence

10   adequate.  But their complaint very clearly states -- and I

11   have quoted from it a couple of times in my reply brief -- we

12   relied solely, we asked for no documents, we saw no documents.

13   That I think you can hold as a matter of law is insufficient.

14   So, that's my argument on the verification.

15           I'd like to address 9(b) if I could as well briefly.

16           THE COURT:  OK.

17           MR. POPOFSKY:  There are purposes to 9(b) other than

18   the ones cited by the plaintiffs' counsel in his brief.  One of

19   the purposes of 9(b) is to dispose of spurious fraud claims at

20   an early stage, that people can't just hurl fraud allegations

21   around without being forced to some specifics.  And here there

22   are some incredibly easy questions to be answered that they

23   don't answer.

24           THE COURT:  You're absolutely right, that the

25   complaint is woefully lacking in facts which have to be

8137MALM

1    available to the plaintiffs to counter, the approximate dates

2    of these several transactions and so on.

3         MR. POPOFSKY:  Well, your Honor, then I think I won't

4    say anything more on that.

5         THE COURT:  Well, you do say something else.  You say

6    but the plaintiff hasn't asked for leave to amend the complaint

7    and, therefore, but...

8         MR. POPOFSKY:  I think they made a choice in

9    responding, your Honor.  They chose to defend the validity of

10   this pleading, and they said all we have to do is say who made

11   the representations and they understand what we're claiming and

12   that's good enough.  So I think you should hold them to their

13   choice.  I think it would be improper to let them have it both

14   ways.  They defend the pleading and now presumably say we would

15   like an opportunity to amend.  I think they had an opportunity

16   to ask for it.

17        THE COURT:  After you educated them on some of the

18   deficiencies.  That's always the risk in making motions at this

19   stage.

20        MR. POPOFSKY:  You are the judge, your Honor, and I

21   can't argue with you on that.  So, unless you have any other

22   questions...

23        THE COURT:  No.

24        MR. FISHER:  Your Honor, Eric Fisher from Morgenstern

25   Jacobs & Blue for the plaintiffs.  I'd like to start with the

8137MALM

1   verification point made by my adversary.

2          I think that your Honor's focus on Mr. Berkowitz's

3   representation that he was coinvesting along with the

4   plaintiffs is of critical significance because I think it

5   frames the context for the whole fraud here.

6          My clients were not relating to Mr. Berkowitz as they

7   would to a broker or as they would to some third party who was

8   promoting an investment to them.  They were relating to him, as

9   your Honor indicated, as someone with whom they had a

10  relationship that went back to the 1980s, who had made

11  recommendations to them in the past, and in whom they put a

12  certain amount of trust; and they were under the impression

13  that they were acting as a group in investing with

14  Mr. Berkowitz.  And I think that in that context, the relative

15  lack of insistence on seeing paper verification of various

16  factual representations that were being made to them by

17  Mr. Berkowitz becomes clear, because they were not relating to

18  him as they would to a broker in which they said, well, let's

19  see some documents about that.

20         When Mr. Berkowitz said that he was investing

21  according to the same terms and conditions, and then proceeded

22  to lay out a series of facts that he thought made the

23  investment, or he claimed made the investment attractive, they

24  took him at his word.  And, of course, the question of the

25  extent of due diligence is inherently variable and fact

8137MALM

1    specific, and discovery ultimately will show that under the

2    circumstances of this relationship the plaintiffs' behavior was

3    reasonable.  But that's not an issue for the motion to dismiss.

4         And in terms of your Honor's question about whether

5    there are cases in which individuals relied on someone's

6    recommendations as a friend, and statements about acts that

7    that person was taking, I haven't seen cases exactly on point,

8    your Honor, but I do know that all of the due diligence cases

9    cited by my adversary involve investors who were standing in

10   some kind of arms-length relationship to the person making

11   representations to them, and that was not the case here.  This

12   is really a simple fraudulent inducement case.

13        With regard to the puffing issue, which Mr. Popofsky

14   just really rested on his papers, I think it's absolutely clear

15   that most of the allegations of misrepresentations in the

16   complaint relate to statements of fact.

17        For me perhaps the most glaring omission by

18   Mr. Berkowitz is the failure to disclose that he was receiving

19   fees from these issuer defendants.  And, again, getting back to

20   the earlier point, if Mr. Berkowitz were receiving fees and my

21   clients knew that, then that would put them in a situation

22   where they might want to ask follow-up questions of

23   Mr. Berkowitz, because they would know that he had some vested

24   interest in soliciting their money.  But they had no idea of

25   that.  And clearly the fact that he was receiving fees and

8137MALM

1     didn't disclose that is an omission of fact.  Similarly, his

2     representation that these loans were personally guaranteed,

3     something which turned out not to be true, it's clearly a

4     statement of fact.  So, I think that there are many material

5     misstatements of fact that are specified in the complaint.

6            In terms of the 9(b) point about which your Honor

7     expressed concerns, the complaint identifies fraudulent

8     statements, it explains why those statements were fraudulent,

9     it explains that in every instance Mr. Berkowitz was the

10    speaker, and it alleges in a general way that those statements

11    were made at or shortly before the time that the investments

12    were made, and it specifies the month and year of each

13    investment.  What it does not allege is whether those

14    statements were made in face-to-face meetings -- some of them

15    were -- whether they were made by telephone call -- some of

16    them were.  But aside from that level of granularity in the

17    detail, I do think the allegations are certainly specific

18    enough to put Mr. Berkowitz on notice of what this case is all

19    about, to allow him to prepare a defense, and with enough

20    specificity that it should be clear to the court that this is

21    not some effort to drag Mr. Berkowitz's name through the mud

22    but it is a complaint that is really grounded in fairly

23    specific factual allegations.

24            THE COURT:  I'm going to deny the motion to dismiss

25    the complaint without prejudice to renewal.  I am going to

8137MALM

1    direct that the plaintiff file an amended complaint with as

2    much specificity as you can.  What you do is you say three

3    transactions and this happened in all three.  Well, use some

4    more paper and indicate to the extent you can the approximate

5    dates, if you don't have the exact dates; who was present when

6    the things were said; and whatever other detail you can furnish

7    as to the who, what, when and where.

8        I'm going to allow the defendant to renew the motion

9    addressed to the amended complaint, and also I allow both

10   parties to deal with the question that I started out with, and

11   that is what type of diligence is required in the context of

12   the relationship which existed as alleged here and where the

13   representations are something which the defendant said he

14   did -- not that he knew of or heard of or was told -- but

15   something that he did; and of course the omission of what he

16   did not say, which would have of course changed the nature of

17   the relationship as perceived by the plaintiffs and made more

18   relevant the classic cases that the defendant relies on where

19   somebody has the opportunity to read the prospectus or make

20   inquiry.

21       Tell me how much time you require to do any of those

22   things.  The amended complaint, within three weeks?

23       MR. FISHER:  Yes, your Honor.

24       THE COURT:  Plaintiff to amend the complaint within

25   three weeks.  Defendant may renew the motion --

8137MALM

1          MR. POPOFSKY:  30 days, your Honor?

2          THE COURT:  -- within 30 days.

3          MR. POPOFSKY:  Thereafter.

4          THE COURT:  30 days after receipt of amended

5    complaint.

6          Both parties to file supplemental briefs within -- let

7    me give you a specific date -- amended complaint within three

8    weeks, I guess by January 24th.  Defendant may renew motion

9    within 30 days after the receipt of the amended complaint,

10   which would be February 25.  Both parties to file supplemental

11   briefs on March 18.

12         MR. POPOFSKY:  I'm not sure, your Honor, if I renew

13   the motion on the 25th, then wouldn't the next step be for the

14   plaintiff to respond, rather than both sides?

15         It seems to me I would file the motion on the 25th

16   with my brief, he would respond the 18th, and then could I have

17   ten days to reply?

18         THE COURT:  Do you really need that?  Do you really

19   need the reply briefs?  I mean I don't care, but, yes, do you

20   want to do that?

21         MR. POPOFSKY:  Yes, your Honor.

22         THE COURT:  All right.  Defendant will renew motion

23   within 30 days; the plaintiff has 30 days to respond.  That

24   takes us to March 25.  Both parties file supplemental briefs by

25   April 25th.  I will take it on submission.  I don't think there

8137MALM

1    is any need for further oral argument.

2              MR. POPOFSKY:  I am just confused, your Honor, when

3    you say both parties.  Is it not sequential?

4              THE COURT:  No.  What do you mean sequential?

5              MR. POPOFSKY:  Your Honor, I'm not understanding.  If

6    I make a motion, I submit a brief.

7              THE COURT:  Yes.

8              MR. POPOFSKY:  Then if he responds, he submits a

9    brief.

10             THE COURT:  Yes.

11             MR. POPOFSKY:  So then if I reply it's my reply.  It's

12   not supplemental from both of us, is it?  He has already

13   responded.  I am just confused at to what you are ordering or

14   authorizing.

15             THE COURT:  I think it's two issues.  One is the

16   adequacy of the complaint as a matter of pleading, and the

17   other is the legal issue of whether in the context of a

18   relationship alleged by the plaintiffs, where the

19   representations allegedly made by the defendant of things which

20   he had done requires the same standard of vigilance that the

21   courts have required in the cases you cited.

22             MR. POPOFSKY:  I understand that a hundred percent. I

23   would respectfully suggest that that be dealt with in our sets

24   of papers rather than then with another mutual set.  It just

25   seems less workable to me, unless Mr. Fisher feels otherwise.

8137MALM

1          MR. FISHER:  Your Honor, I think what you have ordered

2     is that the defendants move to dismiss the amended complaint --

3          THE COURT:  Yes.

4          MR. FISHER:  -- that I file my opposition.

5          THE COURT:  OK.

6          MR. FISHER:  -- and then thereafter we submit to your

7     Honor the briefs specifically addressing the question about

8     what happens when a defendant makes a representation about an

9     act that he himself has done.  Is that --

10          MR. POPOFSKY:  It seemed to me to make more sense to

11     do it in the context of motion papers rather than a motion and

12     separate papers, but whatever your Honor wishes.

13          THE COURT:  I couldn't care less.  Tell me the dates

14     you would propose and the events you would propose.

15          MR. POPOFSKY:  On your dates, your Honor, he amends by

16     January 24th, I make a motion to dismiss on February 25th.

17          THE COURT:  Right.

18          MR. POPOFSKY:  He responds on March 25th.

19          THE COURT:  Right.

20          MR. POPOFSKY:  And I reply April 15th.

21          THE COURT:  OK.  By April what?

22          MR. POPOFSKY:  15th.

23          THE COURT:  OK.

24          MR. FISHER:  I have no problem with that, your Honor.

25          THE COURT:  OK.  Very well.

1          MR. POPOFSKY:  Thank you, your Honor.

2          MR. FISHER:  Your Honor, during this interim period is

3    discovery permitted to proceed?  Because we are now talking

4    about a fairly lengthy additional briefing period on a

5    potentially renewed motion to dismiss.

6          MR. POPOFSKY:  Well, your Honor, there are other

7    defendants as well, some have been served.  I understand one

8    just answered.  I would argue the whole point of trying to

9    dismiss this fraud claim is not to subject my client to that

10   kind of burden unnecessarily.

11         It's not my client's fault that they put in a

12   complaint that was, in your Honor's own words, woefully

13   deficient in specifics on fraud, so I think waiting all of

14   these years they could wait a couple more months.

15         THE COURT:  Assuming that all of these deadlines are

16   adhered to, and that there is no request for a delay, I will

17   stay taking depositions.  The question of whether to stay

18   document discovery is another point.

19         MR. POPOFSKY:  Document discovery in some ways, your

20   Honor, is more burdensome than depositions.

21         THE COURT:  Oh, I don't think in this case that would

22   be true, but you know the case better than I do.  I will stay

23   discovery pending the completion of the schedule that we have

24   now agreed upon.  Thank you, gentlemen.

25                              - - -