UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AVNER MALOUL and ALLEN LOWY,

                Plaintiff,                            07 Civ. 8525 (LBS)

      -against-

IVAN BERKOWITZ, GREAT COURT
CAPITAL, LLC, SD PARTNERS, LLC,
UTIX GROUP, INC., VSUS TECHNOLOGIES,
INC., and SUNSET BRANDS, INC.,

                Defendants.
------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS

GERSTEN SAVAGE, LLP
600 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022-6018
(212) 752-9700

# Table of Authorities

**Cases**                                                                              **Pages**

*B. Lewis Productions v. Angelou*, 2008 U.S. Dist. LEXIS 32783 (S.D.N.Y. Apr. 22, 2008) ........3

*Doehla v. Wathne Limited, Inc.*, 1999 U.S. Dist. LEXIS 11787 (S.D.N.Y. August 3, 1999)......2,3

*Faller v. Jaffe*, 564 F. Supp. 1177 (S.D.N.Y. 1983).........................................................................3

*Hyosung America v. Sumagh Textile Co.*, 137 F.3d 75 (2d Cir. 1998)............................................4

*JP Morgan Chase Bank v. Winnick*, 350 F. Supp.2d 393 (S.D.N.Y.2004)...................................2,3

*In re Spar*, 176 B.R. 321 (S.D.N.Y. 1994).....................................................................................5

*In re Sobel*, 37 B.R. 780  (E.D.N.Y. 1984).....................................................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AVNER MALOUL and ALLEN LOWY,

                    Plaintiff,                    07 Civ. 8525 (LBS)

     -against-

IVAN BERKOWITZ, GREAT COURT
CAPITAL, LLC, SD PARTNERS, LLC,
UTIX GROUP, INC., VSUS TECHNOLOGIES,
INC., and SUNSET BRANDS, INC.,

                    Defendants.
------------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS

     Plaintiffs' answering brief fails to rebut the deficiencies in their pleading identified in

defendants' renewed motion to dismiss.

I.

     The key point in plaintiffs' brief, and on this motion, is plaintiffs' attempt to recast their

prior concession that they did absolutely nothing at all to verify the truth of the representations

they claim were made to them by defendant Ivan Berkowitz.  In their first complaint, plaintiffs

not only acknowledged, but affirmatively announced, that they

> invested solely based on representations made by Berkowitz.  They were not
> provided with [and do not allege to have asked for] any written information about
> the Investments in advance of committing funds.

(Popofsky Aff. Ex. B at Para. 20)  On this renewed motion to dismiss, defendants stressed in our

moving brief that "[t]his motion is not about 'the extent of due diligence,' as plaintiffs' counsel

has tried to claim.  It is about whether plaintiffs can maintain their fraud claim having done none

at all" (Def. Br. at 1).  In response, on the next-to-last page of their brief, plaintiffs weakly

protest:

> [D]efendants . . . characterize this action as one in which the Plaintiffs engaged in 'zero' due diligence. That is not an entirely fair characterization. It would be more accurate to say that the extent of Plaintiffs' due diligence was restricted to numerous conversations with Berkowitz. (Pl. Br. at 14)

But the "conversations with Berkowitz" are the very ones in which the misrepresentations allegedly were made! If the Court equates "receiving alleged misrepresentations" with "seeking to verify the truth," then plaintiffs' argument will have succeeded. If, however, the Court rejects that circular logic, then plaintiffs should be deemed to have conceded (i) that some minimal attempt to verify was required (since the truth here was so easily ascertainable), and (ii) that they made no such attempt at all. Those concessions are fatal to plaintiffs' case and the motion should be granted on that basis, as set forth in the moving brief on this motion.

Plaintiffs' attempt to pile on caselaw does not overcome that devastating flaw in this particular complaint. There are undoubtedly many cases where the extent of plaintiffs' conduct presents a disputed issue of fact, but this happens not to be one of them. Plaintiffs' own cases concede that "[the Second Circuit] unquestionably countenances dismissal on reasonable reliance grounds on a motion to dismiss," as long as it is "plain from a review of the complaint" that "the plaintiff utterly failed to examine the defendants' representations or to perform due diligence in entering the challenged transaction in the first place." *Doehla v. Wathne Limited, Inc.*, 1999 U.S. Dist. LEXIS 11787 (S.D.N.Y. August 3, 1999) at *31, *35; *JP Morgan Chase Bank v. Winnick*, 350 F. Supp.2d 393, 409 (S.D.N.Y. 2004).

That is precisely what occurred here. "'Only when matters are held to be peculiarly within defendant's knowledge is it said that plaintiff may rely without [investigating], as he had no

independent means of ascertaining the truth'" (*B. Lewis Productions v. Angelou*, 2008 U.S. Dist.

LEXIS 32783 (S.D.N.Y. Apr. 22, 2008) at *22).  Plaintiffs argue that "'peculiarly' within the

knowledge of defendants does not necessarily [mean] 'exclusively' within [their] knowledge"

(Pl. Br. at 12), but under the law, information is deemed "peculiarly within the other party's

knowledge [only] 'where [the] party would face high costs in determining the truth or falsity of

an oral representation and those costs are sufficiently great to render reliance upon the

representation reasonable." Id.; see also *JP Morgan Chase Bank*, supra, 350 F. Supp.2d at 410:

> '[T]he peculiar knowledge exception applies not only where the facts allegedly misrepresented literally were within the exclusive knowledge of the defendant, but also where the truth theoretically might have been discovered, though only with extraordinary effort or great difficulty.'

Simply asking for a copy of the supposed "guarantees," or the documents evidencing the claimed

"co-investment," would hardly have amounted to a "high cost" or "extraordinary effort or great

difficulty."  To the contrary, those documents were "easily accessible" for the asking – had they

asked and been refused, we would have a different case – and thus falls into that category of

cases as to which the Second Circuit "unquestionably countenances dismissal" (*Doehla*, supra at

*27, *31).

Plaintiffs' cases on this point are not only inapplicable but the discussion in their brief is

actively misleading.  Most egregiously, plaintiffs cite *Faller v. Jaffe* as holding that "plaintiff's

reliance on oral representation by defendant was reasonable, even though plaintiff could have

verified the information at issue with the state insurance department" (Pl. Br. at 12-13, citing

*Faller v. Jaffe*, 564 F. Supp. 1177 (S.D.N.Y. 1983)).  However, the case involved affirmative

concealment, by a seller of a business, of an ongoing Insurance Department investigation "which

4

threatened [the seller] with substantial potential liabilities and a severe diminution in revenues."

The court noted that defendant "took steps to prevent [plaintiff] from finding out about the

investigation" and falsely represented in writing that "there is no . . . investigation before or by

any governmental . . . authority pending or threatened. . . ."  The court held, quite appropriately:

> While it might have been more prudent for [plaintiff] to check with the Insurance
> Department and with every appropriate regulatory or prosecuting agency to
> determine whether any investigations or prosecutions might affect the companies,
> his failure to do so in reliance on [defendant's] warranty did not constitute
> carelessness of a type or degree that would bar his action based on [defendant's]
> fraud.

Id. at 1181.  See also *Hyosung America v. Sumagh Textile Co.*, 137 F.3d 75 (2d Cir. 1998), which

plaintiffs cite for the proposition that "reliance was not unreasonable as a matter of law, even

though inspection of available files might have revealed falsity of representations" (Pl. Br. at 13).

However, once again the actual facts of that case are not remotely comparable to the facts here.

The *Hyosung* plaintiff alleged that defendant "delivered non-conforming fabric and created

documents which falsely represented the fabric blend for the purpose of fraudulently drawing

against [plaintiff's] letters of credit."  Defendant claimed that plaintiff "had the ability to discover

the non-conforming fabric, but 'failed to make use of information available to it.'  For instance,

[plaintiff] could have asserted its right under the [parties'] Agreement to receive 'all details'

relating to the purchases by examining [certain] documentation, which would have revealed [the

mislabeling].  Additionally, [plaintiff] could have insisted on . . . 'laboratory test results

confirming that the fiber content of the fabric it received was correct'" (id. at 78; citations

omitted).  The Second Circuit held that "[a] reasonable jury could conclude that [plaintiff] was

not put on notice to review [the underlying] files and that, even if on notice, such a review would

5

not have discovered the problem. . . . We do not believe that [plaintiff] was 'placed on guard or practically faced with the facts' as a matter of law, or that [plaintiff] had the means to become aware of the facts by . . . 'ordinary' measures" (id.).

Those cases have nothing to do with the facts here. As noted above, plaintiffs do not necessarily have to do a lot, but they have to do something – this is not a case about how much was enough, but whether "nothing" is sufficient. The Court should hold that it is not.

II.

At oral argument on the first motion to dismiss, the Court raised the question whether there "might be an exception to the general rule [of *Schumaker v. Mather*]" where "the alleged misrepresentation is of something which the defendant [said he himself] had done . . ." (Popofsky Aff. Ex. F at 6-7). The burden should be on plaintiffs to show that such an exception exists, and they have not done so. In any event, defendants cited two cases in our prior brief (see Def. Br. at 11-12) clearly demonstrating that no such exception has been applied by the courts. Plaintiffs made no attempt whatsoever to explain why those cases do not negate the existence of the possible exception the Court asked the parties to research and discuss.

Indeed, although the Court expressly asked the parties to focus on that question when briefing this motion, plaintiffs did not do so and barely allude to it in passing. See Pl. Br. at 12, stating that "[b]oth the *Spar* and *Sobel* cases involved defendants, who were friends of the plaintiffs, representing that something within their control was true when, in fact, it was not" (Pl. Br. at 12). But neither of those cases is at all on point with this one. *In re Spar*, 176 B.R. 321 (S.D.N.Y. 1994), did not involve a representation that could have been verified (and hence the *Schumaker* rule would not come into play), because it dealt with a statement of future intent (that

6

defendant intended to execute a note).  And in *In re Sobel*, 37 B.R. 780, 783 (E.D.N.Y. 1984),

plaintiffs were in fact shown "copies of . . . financial statement[s] . . . for [two] fiscal years," in

sharp contrast to this case, where (to repeat) plaintiffs admit that they "were not provided with

any written information about the Investments in advance of committing funds" (Popofsky Aff.

Ex. B at Para. 20)[1]

## III.

    While not claiming a fiduciary obligation, in opposing this motion plaintiffs nonetheless

rely heavily on the fact that they have alleged a longstanding friendship between plaintiff Lowy

and defendant Berkowitz.  Plaintiffs' argument misses the point, however.  If and when it

becomes necessary or appropriate to weigh and evaluate facts and circumstances and context,

then it is unexceptional that the nature of the parties' relationship is a factor.  Defendants could

not and do not dispute that.  However, that proposition is inapplicable here, because plaintiffs

cite no authority holding that in the absence of fiduciary status, a "friendship" or any other

relationship totally excuses a plaintiff from seeking to verify what he claims to have been told (if

that truth is easily ascertainable, as it was here).  The sole issue on this motion is whether

plaintiffs are so totally excused, and the Court should conclude that they are not, for the reasons

set forth above and in the moving brief on this motion.[2]

---

[1] Even if the court were to find the exception it posited might exist, which it should not for the reasons set forth in our moving brief and above, that would only apply to the alleged representation that Berkowitz was "co-investing" with plaintiffs, and would not in any event preclude dismissal of claims relating to the alleged representation that there were personal guarantees by others.

[2] In any event, if the "friendship" between the parties were relevant and dispositive, as plaintiffs claim – which it is not for the reasons stated in the text above – that would salvage only the claims of plaintiff Lowy.  The amended complaint alleges no friendship or personal relationship whatsoever between plaintiff Maloul (who is plaintiff Lowy's friend) and defendant Berkowitz.  Thus at a bare minimum the claims of Maloul cannot stand, even on plaintiffs' own analysis.

7

IV.

Defendants will not burden the Court with further briefing on "puffing." For the reasons

set forth on page 5 of our moving brief, all claims should be dismissed with regard to the

allegations that there were "misrepresentations that these were safe investments, in which the

principal amounts were secure," that "the returns were going to be 'huge,'" that plaintiffs "could

make above-market returns" if they continued to invest with Berkowitz, that one of the

investments was "even better" than the other, and that Berkowitz had "'access to very good

deals'" and they were "'going to make a lot of money together'" (Amended Complaint, Popofsky

Aff. Ex. A at Paras. 31, 43, 46, 56, and 96).

V.

Finally, both sides agree that plaintiffs' rescission claim "rises or falls with the fraud

claim" (see Pl. Br. at 15). Defendants believe that plaintiffs have not stated a valid claim for

fraud, as discussed, and if the Court agrees then the rescission claim should fail as well and the

entire suit should be dismissed (this time with prejudice).


Dated: May 8, 2008


GERSTEN SAVAGE LLP
Attorneys for Defendants Ivan Berkowitz,
Great Court Capital, LLC and SD Partners,
LLC

By: _____
Steven R. Popofsky (SP-4224)
600 Lexington Avenue
New York, New York 10022
(212) 752-9700