Eric B. Fisher, Esq.
Regina M. Alter, Esq.
Butzel Long, a professional corporation
380 Madison Avenue
New York, New York  10017
Telephone:  (212) 818-1110
Facsimile:  (212) 818-0494
Email:  fishere@butzel.com
          alter@butzel.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

AVNER MALOUL and ALLEN LOWY,

                    Plaintiffs,

          -against-

IVAN BERKOWITZ, GREAT COURT
CAPITAL, LLC, SD PARTNERS, LLC,
UTIX GROUP, INC., VSUS TECHNOLOGIES,
INC., SUNSET BRANDS, INC., JEFFREY
RINDE and HODGSON RUSS LLP,

                   Defendants.

-------------------------------------------------------------x

07 Civ. 8525 (LBS)

**SECOND AMENDED
COMPLAINT**

Plaintiffs, by their attorneys Butzel Long, a professional corporation, for their

Second Amended Complaint, allege upon personal knowledge as to themselves and their

own acts, and upon information and belief as to all other matters, as follows:

## SUMMARY OF THE ACTION

    1.      By this action, Plaintiffs seek to be made whole for investment losses

suffered as a result of Defendants' wrongful conduct.  Defendant Ivan Berkowitz,

through certain affiliated entities, fraudulently induced Plaintiffs to purchase securities

without disclosing the risks of those investments, and without disclosing that Berkowitz

and the affiliated entities were acting as unregistered broker-dealers in violation of federal securities laws. The companies that issued these securities to Plaintiffs knew that their investments had been actively solicited by Berkowitz and agreed to pay a fee to Berkowitz and/or his affiliated entities, even though the issuer companies knew that none of the Berkowitz-affiliated entities were registered broker-dealers authorized to sell securities.

2.      Defendants Jeffrey Rinde and Hodgson Russ LLP aided and abetted Berkowitz's fraud and breached their own fiduciary duty to Plaintiffs by knowingly and intentionally failing to disclose material information about the investments at issue in this case as well as their unwaivable conflict arising from their simultaneous representation of the issuer companies, defendant Berkowitz and Plaintiffs and by placing others' interests ahead of Plaintiffs'.

## VENUE AND JURISDICTION

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Count I arises under the Securities Exchange Act of 1934 (the "1934 Act").

4.      This Court has supplemental jurisdiction over the remaining state law claims asserted in Counts II, III, IV and V pursuant to 28 U.S.C. § 1367, because they are so related to the claim asserted in Count I that they form part of the same case or controversy.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

6.   ·   Plaintiff Avner Maloul is a resident of Great Neck, New York.

2

7.      Plaintiff Allen Lowy is a resident of New York, New York.

8.      Defendant Ivan Berkowitz ("Berkowitz") resides at 1 West 72nd Street, New York, New York 10023.

9.      Defendant Great Court Capital, LLC ("Great Court") is a New York corporation located at 444 Madison Avenue, 24th Floor, New York, New York 10022.

10.     Defendant SD Partners, LLC ("SD Partners") is a Delaware corporation that transacts business in the State of New York and in this District.

11.     Berkowitz is a principal of both Great Court and SD Partners.  (Berkowitz, Great Court and SD Partners are collectively referred to herein as the "Berkowitz Defendants.")

12.     Defendant Utix Group, Inc. ("Utix") is a Delaware corporation with its principal place of business at 7 New England Executive Park, Suite 610, Burlington, Massachusetts 01803.

13.     Defendant VSUS Technologies, Inc. ("VSUS") is a Delaware corporation with its principal place of business at 902 Clint Moore Road, Suite 138, Boca Raton, Florida 33487.

14.     Defendant Sunset Brands, Inc. ("Sunset") is a Nevada corporation with its principal place of business at 10990 Wilshire Boulevard, Los Angeles, California 90024. (Utix, VSUS and Sunset are collectively referred to herein as the "Issuer Defendants.")

15.     Upon information and belief, defendant Jeffrey Rinde ("Rinde") is an attorney licensed to practice law in the State of New York and is a resident of New York, New York.

16.     Defendant Hodgson Russ LLP ("Hodgson Russ") is a New York limited liability partnership with its principal place of business at 1 M & T Plaza, Suite 2000, Buffalo, New York, 14203.  Hodgson Russ has over 200 lawyers located in seven offices in Albany, Buffalo, Johnstown, and New York, New York; Palm Beach, Florida; and Toronto, Ontario, Canada.  Upon information and belief, Hodgson Russ acquired and is the successor in interest to the law firm of Bondy & Schloss LLP.

## FACTUAL ALLEGATIONS

17.     This case concerns a series of investments (the "Investments") made by Plaintiffs exclusively in reliance on false representations and material omissions knowingly made by the Berkowitz Defendants.

### The November 2003 Investments

18.     Berkowitz and Plaintiff Allen Lowy have known one another since the early 1980s.  Over time, Berkowitz established a relationship of trust with Plaintiff Allen Lowy.

19.     Berkowitz then betrayed that trust by unlawfully inducing Plaintiffs Allen Lowy and Avner Maloul to make a series of investments in the Issuer Defendants.

20.     In or about November 2003, in a conversation on West 42nd Street in Manhattan, Berkowitz told Allen Lowy that Berkowitz had an opportunity to invest in VSUS.  Berkowitz told Lowy that he wanted to keep most of the investment opportunity for himself, but that he would let Lowy in on a "small piece" of the investment due to his longstanding relationship with Lowy and out of a sense of appreciation for assistance that Lowy provided to Berkowitz's family on numerous occasions during the preceding years.

21.     During this same conversation, Berkowitz also told Lowy that the investment principal was guaranteed by VSUS' officers, and that it was a secure investment.

22.     Lowy told Berkowitz that he wanted to let his friends Avner Maloul and Robert Kornstein participate in the investment as well. Berkowitz initially expressed reluctance at the thought of allowing others to participate in the investment, but later relented, telling Lowy that he would allow Maloul and Kornstein to participate as well.

23.     Following this conversation, there were a series of telephone calls between Berkowitz and Lowy concerning additional details about the investment in VSUS.

24.     During the conversation and the telephone calls that followed, Berkowitz failed to disclose to Lowy that VSUS was paying Berkowitz a fee to solicit this investment.

25.     Berkowitz knew that the VSUS investment was high risk and also knew that there were no personal guaranties of the principal amount of the investment. Yet, Berkowitz continued to misrepresent these facts.

26.     During the initial conversation and subsequent telephone calls, Berkowitz emphasized repeatedly that Berkowitz would be co-investing along with Lowy and Maloul according to the same terms.

27.     Lowy recounted to Maloul all of the information that had been supplied by Berkowitz.

28.     Both Lowy and Maloul, in reliance on Berkowitz's statements and his material omissions, invested funds in VSUS. Specifically, Lowy and Maloul each

invested $85,000 in VSUS, in exchange for promissory notes and Class A warrants to purchase shares.

29.     If Plaintiffs had known that Berkowitz, in fact, was not co-investing according to the same terms and conditions, they would not have made the VSUS investment.

30.     If Plaintiffs had known that the VSUS investment was, in fact, not protected by personal guaranties, they would not have made the VSUS investment.

31.     If Plaintiffs had known that Berkowitz was concealing the fact that he would be collecting a fee from VSUS in exchange for soliciting their investments, they would not have made the VSUS investment.  Further, if Plaintiffs had been aware from the outset that Berkowitz was, in fact, acting as a paid securities broker, they would have, at a minimum, taken additional steps to further scrutinize the investment.

32.     Upon information and belief, at all times relevant to the allegations herein, Berkowitz was not a registered securities broker.

<u>The May 2004 Investments</u>

33.     Shortly after the November 2003 investment, Berkowitz met with Lowy in Berkowitz's office.  During that meeting, Berkowitz told Lowy that he could make above-market returns if he continued to invest with Berkowitz.  Berkowitz claimed that any investment he brought to Lowy's attention would meet the following criteria: (a) the principal amounts would be guaranteed by the issuer's officers; and (b) there would be an opportunity to cash out the principal after a relatively short period of time.  Berkowitz claimed to have access to a number of investments that satisfied these criteria, and also

said: "I don't know of any case where a CEO of a public company guaranteed a loan, and the loan defaulted."

34.     In or about May 2004, Berkowitz initiated contact with Lowy again, this time telling him about an opportunity to invest in Utix.

35.     In a telephone conversation in or about May 2004, Berkowitz told Lowy that the Utix investment, like all of the opportunities that he would bring to Lowy's attention, satisfied the criteria set forth in paragraph 33 above.

36.     Berkowitz told Lowy that he would be co-investing in Utix according to the same terms and conditions.

37.     Berkowitz did not disclose to Lowy that he would be paid a fee by Utix, in exchange for soliciting the investment.

38.     Lowy recounted to Maloul all of the information that had been supplied by Berkowitz.

39.     In or about May 2004, in reliance on the statements set forth above and Berkowitz's material omissions, Lowy invested $97,500 in Utix and Maloul invested $102,500 in Utix, in exchange for 15% promissory notes and five year warrants to purchase shares.

40.     If Plaintiffs had known that Berkowitz, in fact, was not co-investing according to the same terms and conditions, they would not have made the Utix investment.

41.     If Plaintiffs had known that the Utix investment was, in fact, not protected by personal guaranties, they would not have made the Utix investment.

42.     If Plaintiffs had known that Berkowitz was concealing the fact that he would be collecting a fee from Utix in exchange for soliciting their investments, they would not have made the Utix investment.  Further, if Plaintiffs had been aware from the outset that Berkowitz was, in fact, acting as a paid securities broker, they would have, at minimum, taken additional steps to further scrutinize the investment.

43.     Upon information and belief, at all times relevant to the allegations herein, Berkowitz was not a registered securities broker.

<u>The September and October 2004 Investments</u>

44.     Through the introduction made by Lowy, Berkowitz came to develop his own friendship with Maloul.

45.     On several occasions during 2004 and 2005, Berkowitz told Maloul in-person that he had "access to very good deals," and the two were "going to make a lot of money together."

46.     In telephone calls during September and October 2004, Berkowitz told Lowy about the opportunity to invest in 1st Alerts, Inc. ("1st Alerts"), a company that later became a subsidiary of VSUS in or about April 2005.

47.     In or about the same time period, Berkowitz also took steps to induce Lowy and Maloul to make an investment in Sunset Brands.

48.     In or about July 2005, in a meeting held in the offices of the law firm of Bondy & Schloss LLP, which was later acquired by Hodgson Russ, Berkowitz told Maloul and Lowy that Sunset Brands was an opportunity that was "even better than VSUS."

49.   In response to questions, Berkowitz again emphasized that the principal amounts invested in Sunset Brands would be secure and were subject to personal guaranties.

50.   With regard to the October 2004 1st Alerts investment and the Sunset Brands investment, Berkowitz told Lowy and Maloul in-person and in telephone calls that he would be co-investing according to the same terms and conditions. He again stressed that he was doing Lowy and Maloul a "favor" by cutting them in on this opportunity and not "taking it all" for himself.

51.   Berkowitz did not disclose that he would be paid fees by 1st Alerts and Sunset Brands, in exchange for soliciting the investment.

52.   In or about September and October 2004, in reliance on the statements set forth above and Berkowitz's material omissions, Lowy invested $50,000 in 1st Alerts and Maloul invested $65,000 in 1st Alerts, in exchange for promissory notes and warrants to purchase shares.

53.   Further, at or about this time, in reliance on the statements set forth above and Berkowitz's material omissions, Maloul invested $100,000 in Sunset Brands, in exchange for convertible stock and warrants.

54.   If Plaintiffs had known that Berkowitz, in fact, was not co-investing according to the same terms and conditions, they would not have made these investments.

55.   If Plaintiffs had known that these investments were, in fact, not protected by personal guaranties, they would not have made these investments.

56.   If Plaintiffs had known that Berkowitz was concealing the fact that he would be collecting a fee in exchange for soliciting these investments, they would not

have made these investments.  Further, if Plaintiffs had been aware from the outset that

Berkowitz was, in fact, acting as a paid securities broker, they would have, at minimum,

taken additional steps to further scrutinize these investments.

57.     Upon information and belief, at all times relevant to the allegations herein,

Berkowitz was not a registered securities broker.

### The April 2005 Investment

58.     In the early part of 2005, at a party that Berkowitz and Maloul both

attended, Berkowitz told Maloul about another opportunity to invest in VSUS.

Berkowitz told Maloul that the returns were going to be "huge."  At the same time, as he

had in his prior conversations with Lowy and Maloul, Berkowitz emphasized the security

of the investment – a factor that was very important to Maloul.

59.     In or about April 2005, Berkowitz solicited yet another round of

investment in VSUS from Lowy and Maloul.

60.     Berkowitz solicited this investment through telephone calls to both Lowy

and Maloul in or about April 2005.

61.     As with the other investments, Berkowitz told Lowy and Maloul that, like

the earlier VSUS investments, this investment met his "criteria" for the "safety" of the

principal amount invested.

62.     Berkowitz touted the investment, emphasizing that he would be

participating according to the same terms and conditions as Lowy and Maloul.

63.     Berkowitz did not disclose he would be paid a fee by VSUS, in exchange

for soliciting the investment.

64.     In or about April 2005, in reliance on the statements set forth above and Berkowitz's material omissions, Lowy invested $40,000 in VSUS and Maloul invested $100,000 in VSUS, in exchange for convertible notes and warrants to purchase shares.

65.     If Plaintiffs had known that Berkowitz, in fact, was not co-investing according to the same terms and conditions, they would not have made this investment.

66.     If Plaintiffs had known that this investment was, in fact, not protected by personal guaranties, they would not have made this investment.

67.     If Plaintiffs had known that Berkowitz was concealing the fact that he would be collecting a fee in exchange for soliciting this investment, they would not have made this investment.  Further, if Plaintiffs had been aware from the outset that Berkowitz was, in fact, acting as a paid securities broker, they would have taken additional steps to further scrutinize this investment.

68.     Upon information and belief, at all times relevant to the allegations herein, Berkowitz was not a registered securities broker.

<u>Allegations Common To All Of The Investments</u>

69.     The total principal amount of the Investments wrongfully solicited by the Berkowitz Defendants is $725,000.

70.     In addition to common law fraud, the Berkowitz Defendants' conduct runs afoul of federal securities laws because the Berkowitz Defendants were not registered securities brokers.

71.     Thus, the Berkowitz Defendants could not legally collect a fee in connection with the sale of the Issuer Defendants' securities to Plaintiffs.

72.     These violations of the broker-dealer registration requirement give rise to a claim for rescission pursuant to Section 29(b) of the 1934 Act.

73.     At all times, Berkowitz knew that Plaintiffs were relying exclusively on Berkowitz's advice and the relationship of trust he had established with them.

74.     The process of turning over the funds for the Investments always followed a similar pattern set forth briefly below.

75.     Plaintiffs' funds were transferred to Hodgson Russ or its predecessor, at the request of, and based upon representations made by, Berkowitz.

76.     The attorney at Hodgson Russ and its predecessor who handled the Investments was defendant Rinde.  As per Berkowitz's instructions, the funds were transmitted by Plaintiffs to Hodgson Russ or its predecessor in trust to be paid over to the Issuer Defendants, in exchange for the securities at issue.

77.     Berkowitz never disclosed that he was acting as a paid broker; never disclosed the risks of these Investments; and never inquired into whether these Investments were suitable for Plaintiffs.

78.     Upon information and belief, Plaintiffs are not the only investors who were subjected to Berkowitz fraudulent scheme with regard to the Investments at issue.

79.     When Plaintiffs became concerned about the soundness of these investments they requested an in-person meeting with Berkowitz, which was held in the offices of Great Court in the winter of 2007.

80.     At no time during this meeting, did Berkowitz ever disclose that, in fact, he had received significant fees from the Issuer Defendants in exchange for successfully soliciting Plaintiffs' funds for the Investments.

81.     Subsequently, in a spring 2007 meeting with Rinde at the offices of Hodgson Russ to express concern about their Investments, Plaintiffs recounted their earlier meeting with Berkowitz.  Rinde finally explained to Plaintiffs that the Berkowitz Defendants had been paid fees by the Issuer Defendants in exchange for soliciting the Investments.

82.     Before the spring 2007 meeting referred to in the preceding paragraph, Plaintiffs were unaware of any facts that would give rise to a violation of the 1934 Act's broker-dealer registration requirements.

83.     Rinde's disclosure described in paragraph 81, was too late.  The Investments are now essentially worthless.

Allegations with Respect to Rinde and Hodgson Russ Common to All Investments

84.     From the time of the first Investment in November 2003 until the spring 2007 meeting with Rinde, Plaintiffs were led to believe by Berkowitz and Rinde that Rinde and Hodgson Russ were representing their interests at the request of Berkowitz. Plaintiffs believed that they were part of Berkowitz's investing "group," and that Rinde and Hodgson Russ were representing them and the group with respect to the investment transactions.

85.     Rinde and Hodgson Russ knew that Plaintiffs were relying on their advice as their counsel with respect to the transactions at issue.

86.     Rinde and Hodgson Russ undertook to represent Plaintiffs' interests with respect to the transactions at issue by advising them with respect to the Investments, acting as their counsel in completing all of the documentation with respect to the Investments and by acting as their representatives with respect to the Investments.

87.     An attorney-client relationship existed between Plaintiffs, on the one hand, and Rinde and Hodgson Russ, on the other.

88.     Unbeknownst to Plaintiffs, however, Rinde and Hodgson Russ were also representing the Issuer Defendants in the transactions at issue.

89.     Rinde's and Hodgson Russ's simultaneous representation of Plaintiffs, Berkowitz Defendants and the Issuer Defendants is in direct violation of the Code of Professional Responsibility, DR 5-105 (now the Rules of Professional Conduct, 22 N.Y.C.R.R. §1200, Rule 1.7).

90.     At no time did Rinde or Hodgson Russ disclose to Plaintiffs that they were simultaneously representing the Issuer Defendants, the Berkowitz Defendants and them in the transactions at issue.

91.     At no time did Rinde or Hodgson Russ disclose to Plaintiffs the conflict of interest that existed as a result of their simultaneous representation of the Issuer Defendants, the Berkowitz Defendants and them in the transactions at issue.

92.     At no time did Rinde or Hodgson Russ seek a waiver from Plaintiffs of the conflict of interest that existed as a result of their simultaneous representation of the Issuer Defendants, the Berkowitz Defendants and them in the transactions at issue.

93.     At no time did Rinde or Hodgson Russ suggest or recommend that Plaintiffs secure their own counsel in connection with the transactions at issue.

94.     If Plaintiffs had been aware from the outset of Rinde's or Hodgson Russ's simultaneous representation, they would have retained their own counsel and taken further steps to scrutinize the Investments.

95.     In addition, prior to and during the time that Plaintiffs were making the Investments, Rinde and Hodgson Russ knew that Berkowitz was acting as a paid broker and the true risks of the Investments.  Rinde and Hodgson Russ also knew that Plaintiffs were not aware of any of the foregoing.

96.     Despite that, Rinde and Hodgson Russ never disclosed to Plaintiffs that Berkowitz was acting as a paid broker; Berkowitz was not co-investing according to the same terms and conditions as Plaintiffs; and that the Investments were not protected by personal guarantees.

97.     Had Plaintiffs known that Berkowitz was acting as a paid broker, Berkowitz was not co-investing according to the same terms and conditions as Plaintiffs, and/or that the Investments were not protected by personal guarantees, they would not have made these Investments.

98.     At all times during the Investments, unbeknownst to Plaintiffs, Rinde and Hodgson Russ were knowingly advancing the interests of the Berkowitz Defendants and the Issuer Defendants ahead of Plaintiffs'.

## COUNT I

### VIOLATION OF SECTION 15(a)(1) OF THE 1934 ACT AND RESCISSION PURSUANT TO SECTION 29(b) OF THE 1934 ACT
(against the Berkowitz Defendants and Issuer Defendants)

99.     Plaintiffs repeat and reallege each and every allegation above as if set forth in full herein.

100.    The Berkowitz Defendants acted as securities brokers within the meaning of Section 15(a)(1) of the Securities Exchange Act.  15 U.S.C. § 78o(a)(1).

101.    Until their spring 2007 meeting with Rinde, Plaintiffs were not aware that the Berkowitz Defendants were acting as brokers and were led to believe that the Plaintiffs were co-investors on equal terms with the Berkowitz Defendants.

102.    The Issuer Defendants paid a fee to the Berkowitz Defendants for their services as securities brokers

103.    The Issuer Defendants knew that the Berkowitz Defendants were acting as securities brokers to sell the securities of the Issuer Defendants.

104.    At all relevant times, none of the Berkowitz Defendants were registered with the U.S. Securities and Exchange Commission as brokers or dealers in accordance with Section 15(b) of the 1934 Act.

105.    The Issuer Defendants knew that the Berkowitz Defendants were not registered broker-dealers.

106.    The Berkowitz Defendants knew that they were not registered broker-dealers.

107.    Plaintiffs' investments in the Issuer Defendants are subject to rescission pursuant to Section 29(b) of the 1934 Act (15 U.S.C. § 78cc(b)), which provides that contracts made in violation of, *inter alia*, Section 15(b) of the 1934 Act shall be void.

108.    Accordingly, Plaintiffs' investments in the Issuer Defendants should be voided and the principal amount of their investment refunded to them, together with interest thereon.

109.    The Berkowitz Defendants and the Issuer Defendants are jointly and severally liable to Plaintiffs for the total principal amount of the Investments, together with interest thereon.

## COUNT II

### COMMON LAW FRAUD
### (Against Berkowitz Defendants)

110.   Plaintiffs repeat and reallege each and every allegation above as if set forth in full herein.

111.   As set forth in detail above, the Berkowitz Defendants made material misrepresentations to Plaintiffs in connection with the Investments, including but not limited to the following: (a) the misrepresentation that Berkowitz would be co-investing according to the same terms and conditions as Plaintiffs; (b) the misrepresentation that the principal amount of the Investments was personally guaranteed; and (c) the misrepresentation that these were safe investments, in which the principal amounts were secure.

112.   In addition to affirmative misrepresentations, the Berkowitz Defendants failed to disclose material information, including but not limited to the fact that the Berkowitz Defendants were acting as unregistered broker-dealers and were collecting fees from the Issuer Defendants.

113.   All of the above misrepresentations and omissions were made knowingly by the Berkowitz Defendants.

114.   Berkowitz knew that the Berkowitz Defendants were acting as unregistered broker-dealers and yet failed to disclose that fact.

115.   Berkowitz knew that the Berkowitz Defendants were to receive a fee from the Issuer Defendants in connection with the solicitation of investments and yet failed to disclose that fact.

17

116.     Berkowitz knew that Plaintiffs were relying exclusively on information supplied by Berkowitz in connection with their decision to make the Investments, and yet he failed to disclose what he knew to be the risks of the Investments.

117.     Berkowitz made the above misrepresentations with a clear intent to induce Plaintiffs to invest so that he would earn an undisclosed fee from the Issuer Defendants.

118.     Plaintiffs made the Investments exclusively in reliance on the material misrepresentations and omissions of the Berkowitz Defendants.

119.     Plaintiffs have been damaged as a result of the Berkowitz Defendants' fraud because the Investments are now essentially worthless.

## COUNT III

### AIDING AND ABETTING COMMON LAW FRAUD
### (Against Rinde and Hodgson Russ)

120.     Plaintiffs repeat and reallege each and every allegation above as if set forth in full herein.

121.     Based on the allegations set forth above, the Berkowitz Defendants defrauded Plaintiffs.

122.     Rinde and Hodgson Russ knew of the Berkowitz Defendants' fraud upon Plaintiffs.

123.     Rinde and Hodgson Russ substantially assisted the Berkowitz Defendants in the execution and achievement of their plan to defraud Plaintiffs by knowingly perpetuating and failing to disclose to Plaintiffs the Berkowitz Defendants' material misrepresentations and omissions in connection with the Investments.

124.     Plaintiffs have been damaged as a result of Rinde's and Hodgson Russ's aiding and abetting of the Berkowitz Defendants' fraud, because the Investments are now essentially worthless.

## COUNT IV

### BREACH OF FIDUCIARY DUTY
### (Against Rinde and Hodgson Russ)

125.     Plaintiffs repeat and reallege each and every allegation above as if set forth in full herein.

126.     As set forth in detail above, an attorney-client relationship existed between Rinde and Hodgson Russ, on the one hand, and Plaintiffs on the other.

127.     Rinde and Hodgson Russ placed themselves in a position of trust and confidence with regard to Plaintiffs.

128.     As a result of that relationship, Rinde and Hodgson Russ owed a fiduciary duty to Plaintiffs to act at all times consistent with the highest standard of loyalty, integrity, honestly and good faith in their dealing with Plaintiffs.

129.     Defendants Rinde and Hodgson Russ breached that duty by, *inter alia*, knowingly and intentionally failing to disclose to Plaintiffs material information as well as their unwaivable conflict arising from their simultaneous representation of the Issuer Defendants, the Berkowitz Defendants and Plaintiffs and by placing the interests of the Issuer Defendants' and the Berkowitz Defendants' ahead of Plaintiffs'.

130.     As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT V

### LEGAL MALPRACTICE
### (Against Rinde and Hodgson Russ)

131.    Plaintiffs repeat and reallege each and every allegation above as if set forth in full herein.

132.    An attorney-client relationship existed between Rinde and Hodgson Russ, on the one hand, and Plaintiffs on the other.

133.    As set forth in detail above, Rinde and Hodgson Russ acted negligently in the performance of their duties to Plaintiffs in failing to exercise that degree of care, skill and diligence commonly possessed by a member of the legal profession by knowingly and intentionally failing to disclose to Plaintiffs material information as well as their unwaivable conflict arising from their simultaneous representation of the Issuer Defendants, Berkowitz Defendants and Plaintiffs and by placing the interests of the Issuer Defendants' and the Berkowitz Defendants' ahead of Plaintiffs'.

134.    But for Rinde's and Hodgson Russ's actions, Plaintiffs would not have made the Investments and would not have sustained damages.

135.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment:

A.    rescinding all of their investment contracts with the Issuer Defendants;

B.    ordering payment of compensatory damages, including an award of interest;

C.    awarding Plaintiffs' costs and fees in bringing this action; and

D.  awarding such other and further relief as may be just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated:  New York, New York
        February 3, 2010

BUTZEL LONG, a professional corporation

By: _____
    Eric B. Fisher
    Regina M. Alter

380 Madison Avenue
New York, New York  10017
Telephone:  (212) 818-1110
Facsimile:  (212) 818-0494
E-mail:  fishere@butzel.com
         alter@butzel.com

*Attorneys for Plaintiffs*